## HOOKS v. CANADIAN HOLDING CO. et al.

No. 18701.  Opinion Filed Oct. 9, 1928.

Rehearing Denied Dec. 4, 1928.

Ledbetter & Ledbetter, for plaintiff in error.

Brett & Brett, for defendants in error.

TEEHEE, C.  In this cause the parties appear here in the same relative positions as in the trial court. The controversy was between the plaintiff, Rufus Hooks, and the defendant Canadian Holding Company. The First National Bank of Davis, the other defendant, was only a stakeholder, and our further necessary reference to it will be as "the bank."

On September 15, 1926, plaintiff, by appropriate pleadings, sought cancellation of a conveyance of an undivided one-half interest of all royalties on oil, gas and other minerals produced and reserved to plaintiff in an oil and gas mining lease theretofore executed by him on certain lands, or in such other leases as may be subsequently made by him on the property. The ground of action was that the royalty grant was made in contravention of law and for that reason void. Defendant's answer put in issue the validity of the grant, and further interposed estoppel of plaintiff to assert its invalidity. Upon trial to the court, judgment went for the defendant.

On appeal no question of fact is raised. The facts were as follows:

Plaintiff is a Chickasaw freedman citizen. On November 20, 1912, he purchased at public sale the property affected by the royalty grant. The property was unallotted land of the Choctaw and Chickasaw Nations, and was sold by the federal government pursuant to the Act of Congress approved April 26. 1906, the same being chapter 1876, 34 Stat. L. 137. Final payment on the purchase price was made by plaintiff on June 8, 1917. The government patent issued on December 1, 1917.

On February 1, 1917, plaintiff, then a single man, made an oil and gas lease on the property, and on February 5, 1917, he in like social status executed the royalty grant in controversy to J. C. Luster and J. E. Morris, who, on February 18, 1920, assigned

the same to the defendant, of which concern they were president and vice-president, respectively.

The oil and gas lease of February 1, 1917, having expired by its own limitations, plaintiff, joined by his wife and the defendant, on November 20, 1923, gave an oil and gas lease on the property to C. F. Dillingham, who, on January 5, 1924, assigned the same to the Humble Oil & Refining Company, the present holder of the lease. The lessee by the terms of the lease has paid into the bank two rental payments aggregating $160, one-half of which defendant claims by virtue of the royalty grant challenged. Under that state of fact, the court found the issues for defendant.

For reversal of the judgment, plaintiff submits two propositions, namely: First, that as the title both legal and equitable to the property was in the Choctaw and Chickasaw Nations at the time of execution of the royalty conveyance to defendant's grantors, the same was void; and, second, that though plaintiff subsequently acquired title to the property, the same did not inure to the benefit of the defendant. Being related subjects. the same will be considered together.

The point of difference between the parties arises upon the question of whether their rights in the controversy should be measured by the rule of federal or state law, plaintiff contending for the one and defendant for the other. It is first to be observed that plaintiff purchased the property, not by virtue of any preferential rights due to his racial classification, that is to say, to complete his allotment as a Chickasaw freedman, but by virtue of his being the highest bidder at the public sale, hence, the question of his status of citizenship is of no importance in the consideration of this case.

The Act of Congress under which the sale was made, in so far as the same is relevant. provided as follows:

"That when allotments as provided by this and the other acts of Congress have been made to all members and freedman of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Tribes. the residue of lands in each of said nations not reserved or otherwise disposed of shall be sold by the Secretary of the Interior under rules and regulations to be prescribed by him, and the proceeds of such sales deposited in the United States Treasury to the credit of the respective tribes. In the disposition of the unallotted lands of the Choctaw and Chickasaw Nations, each Choctaw and Chickasaw freed-man shall be entitled to a preference right, under such rules and regulations as the Secretary of the Interior may prescribe, to purchase at the appraised value enough land to equal with that already allotted to him 40 acres in area. If any such purchaser fails to make payment within the time prescribed by said rules and regulations, then such tract or parcel of land shall revert to the said Indian tribes, and be sold as other surplus lands thereof. The Secretary of the Interior is hereby authorized to sell, whenever in his judgment it may be desirable, any of the unallotted land in the Choctaw and Chickasaw Nations, which is not principally valuable for mining, agricultural, or timber purposes, in tracts of not exceeding 640 acres to any one person, for a fair and reasonable price, not less than the present appraised value. Conveyances of lands sold under the provisions of this section shall be executed, recorded, and delivered in like manner and with like effect as herein provided for other conveyances: Provided, further, that agricultural lands shall be sold in tracts of not exceeding 160 acres to any one person." Section 16, chapter 1876, 34 Stat. L. 137.

Section 5 of the act, as to conveyances here relevant, provided that:

"All patents or deeds to allottees and other conveyances affecting lands of any of said tribes shall be recorded in the office of the Commissioner to the Five Civilized Tribes, and when so recorded shall convey legal title, and shall be delivered under the direction of the Secretary of the Interior to the party entitled to receive the same."

Under these provisions, it is clear that the laws of Congress relative to the alienation of allotted Indian lands by the allottees or their heirs are not here relevant, and for that reason the cases in which questions arising under allotment provisions have been adjudicated are not controlling as contended by plaintiff. Nor does it appear in the provision of authority of sale to have been the intention of Congress to restrict alienation of the lands purchased, so that restrictions upon alienation, as we understand them in relation to allotted Indian lands, present no difficulty in our consideration of the cause.

As a legal proposition, plaintiff had no title in the property at the time of execution of the royalty grant. Of that there can be no doubt, as it has been expressly held by this court that a purchaser of this class of lands acquired no title until final payment of the purchase price had been made. Ward v. Ward. 74 Okla. 291. 182 Pac. 675; Star v. Star. 78 Okla. 119, 188 Pac. 1067; Selsor-Badley v. Reed. 97 Okla. 204, 223 Pac. 651.

This, however, does not mean that plaintiff had no rights in the property. As was said in the Reed Case, supra, by the purchase and initial payment he had acquired the right to make the deferred payments." This was an incipient interest in the property. The purchase and initial payment had the effect of segregating it from the mass of unallotted lands subject to sale under the law. It was not thereafter subject to sale by the government unless plaintiff failed to meet the deferred payments. In that event the land reverted to the general mass. This principle has been judicially applied many times in cases of a homestead entry on public lands to which in principle the cause in hand is analogous. 22 R. C. L. 261, par. 25, and cases cited.

By completing his purchase, plaintiff's incipient interest ripened into an equitable title, and upon the issuance of the patent into a complete legal title when government control thereover ceased and the title of the Choctaw and Chickasaw Nations therein divested. Thereupon plaintiff's title "was exclusively subject to state regulations in so far as remedies were provided for its enforcement or protection." Lessee of French v. Spencer, 21 How. 228, 16 L. Ed. 97. This is the rule upon the removal of restriction against alienation in cases of allotted Indian lands. United States v. Tiger, 19 Fed. (2nd) 35; Decker v. Hickman, 116 Okla. 65, 243 Pac. 516.

As the purchased land was not made unalienable by the law which authorized its sale, and as plaintiff was under no contractual disability when he executed the royalty grant, it cannot be said that his contract was void as in contravention of law as by him contended. Adams v. Church, 193 U. S. 510, 24 S. C. 512, 48 L. Ed. 769; United States v. Biggs, 211 U S. 507, 29 S. Ct. 181, 53 L. Ed. 305.

In his contract plaintiff covenanted as follows:

"And for and in consideration of the sum above set out, said party of the first part does hereby grant, bargain, sell, convey, transfer and assign to said parties of the second part, their heirs and assigns, the (½) one-half of all royalties on oil, gas and other minerals, produced and saved from said real estate at any time, whether under the terms and conditions of the above-mentioned lease, or under the terms and conditions of any other subsequent lease made by said party of the first part, or his heirs or assigns, to any person or persons whomsoever, this covenant and transfer to run with the land, and to be binding upon the parties hereto, their heirs and assigns, and upon any and all lessee or lessees, present or subsequent. To have and to hold said royalties hereby sold, unto said parties of the second part, their heirs and assigns forever."

In Holleman v. Cushing, 84 Okla. 156, 202 Pac. 1029, it was held that:

"Where a grantor, having no title, a defective title, or an estate less than that which he assumed to grant, conveys by warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit, by way of estoppel."

Under the record, therefore, it is our opinion that where a purchaser of unallotted lands of the Choctaw and Chickasaw Nations, sold pursuant to the provisions of section 16 of chapter 1876, 34 Stat. L. 137, prior to final payment of the purchase price, conveys an undivided one-half interest in "all royalties on oil, gas and other minerals produced and saved from said real estate at any time," and subsequently perfects his title thereto under the terms of his purchase, such after-acquired title inures to the royalty grantee, or those holding under him, as the case may be, in the moiety purported to be granted in the purchased land under the royalty conveyance, by way of estoppel.

The judgment of the district court is therefore affirmed.

BENNETT, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.