No. 34,088

R. L. SCHULTZ, *Appellee*, v. CITIES SERVICE OIL COMPANY (Formerly EMPIRE OIL AND REFINING COMPANY), *Appellant*, and UNION NATIONAL BANK OF WICHITA, *Appellee*.

(86 P. 2d 533)

Opinion filed January 28, 1939.

*R. H. Bennett*, of Wichita, *A. M. Ebright, Hayes McCoy, F. H. Bacon, Lois Straight, O. R. Stites* and *S. N. Hawkes*, all of Bartlesville, Okla., for the appellant.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to quiet title. The trial court rendered judgment for plaintiff. The defendant, the Cities Service Oil Company, has appealed.

The record, insofar as it pertains to the question presented here, may be summarized as follows: On and prior to June 1, 1928, R. L. Schultz was the owner of a described section of land in Reno county, and on that date he and his wife executed to the Guaranty Title and Trust Company, trustee, two certain mortgages in the form of trust deeds covering the land to secure the payment of certain notes described therein. On September 13, 1929, for a valuable consideration, R. L. Schultz and wife executed to the Sedgwick Oil Company an instrument denominated "Conveyance of Mineral Interests and Royalty." By its terms they granted, sold and conveyed unto the Sedgwick Oil Company an undivided one-half interest in and to all the oil, gas and other minerals in and under and that may be produced from the section of land, together with the right of ingress

and egress for exploring and operating and storage purposes. It was specifically made subject to an oil and gas lease in favor of the Empire Oil and Refining Company of the same date. It provided that the grantee was to have and to hold the described property, and all rights pertaining thereto, for a period of fifteen years, or as long thereafter as oil or gas is produced in commercial quantities, if discovered within that time, and it contained this paragraph:

"And said grantor does hereby bind himself, his assigns and successors in interest, to warrant and forever defend all and singular the said property unto the said grantee, its assigns and successors in interest, against every person whomsoever lawfully claiming, or to claim, the same, or any part thereof."

On May 14, 1931, the Guaranty Title and Trust Company, trustee, began an action to foreclose its two trust deeds. Personal service was had upon R. L. Schultz and wife. The Empire Oil and Refining Company and the Sedgwick Oil Company were made parties defendant and served by publication. The attorneys for plaintiff in that action wrote those companies, advising them of the filing of the action and sending a copy of the petition, and received a reply from their attorney under the date of July 30, 1931, acknowledging the receipt of the letter, with enclosure, advising that the oil and gas lease on the land to the Empire Oil and Refining Company had been transferred and was then owned by the Cities Service Gas Company, also that the Sedgwick Oil Company had a conveyance of one-half of the minerals under the land; that these interests were acquired September 13, 1929, and that the mortgages sought to be foreclosed, being dated June 1, 1928, are "undoubtedly ahead of our various interests as above stated. I think it will be satisfactory to us if you have the journal entry of judgment show definitely the several interests of our three companies as above stated and provide also that we are entitled, each of us, to eighteen-months period in which to redeem from the foreclosure sale. Also, that at the sale the land shall first be offered subject to our lease, and if it cannot be sold in that way that then it be sold in its entirety." Judgment was rendered in the foreclosure action September 14, 1931, and the decree was framed in accordance with the requests contained in the letter of the attorney for the Empire Oil and Refining Company and the Sedgwick Oil Company. An order of sale was duly issued and the property was sold October 26, 1931. At this sale the property was first offered subject to the oil and gas lease to the Empire Oil and Refining Company and the mineral

deed to the Sedgwick Oil Company. On this offer no bids were received and the property was then offered free and clear of those instruments and was sold to Standish Hall, trustee, for the full amount of the judgment contained in the decree of foreclosure. The period of redemption was fixed at eighteen months, and in harmony with the request of the attorneys for the oil companies, and a certificate of purchase was issued to the purchaser at the sale. The decree of the court provided that in default of redemption the defendants, and each of them, were forever barred of all rights, title or interests in or lien upon the property.

On April 6, 1933, before the expiration of the period of redemption, R. L. Schultz and wife executed a quitclaim deed to the property to one Chester Mills, and on the same day Chester Mills conveyed the property to Wilbur Harrison by warranty deed. On April 11, 1933, Standish Hall, trustee, assigned the certificate of purchase to Chester Mills, who assigned it to Wilbur Harrison on December 27, 1934. By that time the period of redemption, which apparently had been extended, had expired, and on that date, December 27, 1934, the sheriff's deed was issued to Wilbur Harrison, who on the same date conveyed the land by special warranty deed to R. L. Schultz.

On February 29, 1936, the Sedgwick Oil Company executed and delivered to the Empire Oil and Refining Company a deed for its interest in this property. Thereafter, by an amendment to its charter, the name of the Empire Oil and Refining Company had been changed to the Cities Service Oil Company.

The petition in this action was filed December 8, 1937. So far as here important the petition alleged that plaintiff was the owner of the fee-simple title to and in the full, peaceful and actual possession of the property, and that the defendants, among whom were the Cities Service Oil Company, formerly Empire Oil and Refining Company, and the unknown officers, successors, trustees and assigns of the Sedgwick Oil Company, have, or claim to have, some title to, interest or estate in, or lien upon the property adverse to plaintiff, the exact nature and character of which claims were unknown to plaintiff, and plaintiff asked defendants to set up any such claims they have adverse to plaintiff, and that plaintiff have judgment quieting his title against them.

In its answer the defendant Cities Service Oil Company claimed to be the successor in interest to the Sedgwick Oil Company and the

owner of all the mineral rights conveyed by R. L. Schultz and wife to that company by the mineral deed dated September 13, 1929. This claim is based upon the warranty clause contained in that instrument. It was contended by the Cities Service Oil Company in the trial court, because of this warranty clause and notwithstanding the fact that the rights of the Sedgwick Oil Company in the property had been barred by the foreclosure action, that as soon as R. L. Schultz again became the owner of the property the mineral deed again became effective. The trial court held against that contention, hence this appeal.

Appellant contends that R. L. Schultz is estopped by the warranty clause in the mineral deed of September 13, 1929, to assert against appellant full title to the property under the deed he received from Wilbur Harrison, December 27, 1934. It is contended that by virtue of this warranty clause any title which Schultz later acquired to this property immediately inured to the grantee in the mineral deed and to appellant as its successor in interest. It is argued this estoppel against Schultz is not affected by the fact that he received the after-acquired title through the foreclosure of mortgages in existence at the time the mineral conveyance was executed.

Our pertinent statute reads:

"Where a grantor by the terms of his deed undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and shall not at the time of such conveyance have the legal title to the estate sought to be conveyed, but shall afterwards acquire it, the legal estate subsequently acquired by him shall immediately pass to the grantee; and such conveyance shall be as effective as though such legal estate had been in the grantor at the time of conveyance." (G. S. 1935, 67-207.)

While this statute is discussed by counsel, appellant, in this court at least, does not contend seriously that the warranty provisions of the mineral deed of September 13, 1929, under the facts disclosed by this record, bring it within the purview of this statute.

Appellant's argument is that under the rules of the common law, and independently of this statute, plaintiff, having at one time executed a conveyance with covenants of warranty of an interest in real property, even for a limited time, and even though the interest so conveyed later was forever barred by a valid court decree, the moment plaintiff again acquired title to the property, whether that be soon or late, the mineral deed again became effective; and as against the grantee in the mineral deed, or its successor in interest, plaintiff is estopped to contend the mineral deed is not in force. We cannot agree with this contention.

It is conceded Wilbur Harrison acquired and held good title to the land; that as to him the rights of the grantee in the mineral deed were completely cut off; that Harrison could have held the title for years and could have conveyed it to anyone other than plaintiff, and that the title so held or conveyed and held by such grantee, or subsequent grantees other than plaintiff, would have been free and clear from the mineral deed and of any rights of the grantee therein, or of this appellant. But it is argued that if and when plaintiff again acquired title to the property from anyone the mineral deed again became effective, and the grantee therein, or its successor in interest, again had all the interest and rights originally granted by it. This argument does not meet with our approval. It would tend to make titles to real property uncertain, contrary to the public policy in this state.

Perhaps the early common-law rule was as broad as appellant contends, but if so, it was modified by acts of Parliament as to collateral titles. (2 Black's Commentaries, 300 to 303.) The common-law rule applied to two classes of conveyances. (21 C. J. 1086.) The attempt to apply this rule in this country where, especially as years have passed, different fundamental concepts have developed respecting property rights and instruments relating thereto, has produced a multitude of decisions, many of which are collected in the American Digest system under "Estoppel," key number 38.

In this country statutes have been enacted in many states which affect or govern the matter. These are classified and commented upon in 16 Am. Jur. 631. We think our statute was intended to govern the subject in this state, where, generally speaking, we have sought to get away from troublesome common-law doctrines pertaining to titles to property.

Appellant cites and relies strongly on *Scoffins v. Grandstaff,* 12 Kan. 467, and *Armstrong v. Building Co.,* 57 Kan. 62, 45 Pac. 67; but these cases differ materially from the facts in the case now before us. Appellant criticizes the rulings of the court on this point in the cases of *Crum et al. v. Oil Co.,* 117 Kan. 54, 230 Pac. 299, and *Malone v. Young,* 148 Kan. 250, 81 P. 2d 23, and asks that those cases be modified. We are entirely satisfied with the rulings of the court in those cases.

We think our statute never was intended to apply to a title acquired from an independent source after the conveyance containing the warranty relied upon was set aside or rendered nugatory by

judicial decree, or by the operation of some other provisions of law. In *Ervin v. Morris*, 26 Kan. 664, it was held:

"Where A, having a perfect title to a tract of land, executes a warranty deed therefor with full covenants, he is not thereby estopped from purchasing at sheriff's sale or tax sale any independent title arising subsequently to such conveyance, and holding the same for his own benefit." (Syl. ¶ 2.)

This was cited on this point and applied in the recent case of *Midland Realty Co. v. Halverson*, 101 Mont. 49, 52 P. 2d 159, 162.

Ordinarily a covenant of warranty, when broken, ceases to run with the land and becomes a chose in action. (15 C. J. 1245.) When the rights of the grantee in the mineral deed were barred by the foreclosure decree, sale, confirmation and sheriff's deed, the mineral deed ceased to have any force or effect.

Appellee argues some additional points in support of the judgment of the trial court, but we find it unnecessary to pass upon them.

The judgment of the court below is affirmed.