HANLON et al. v. McLAIN et al.

No. 34234.    April 1, 1952.

*242 P. 2d 732.*

Marshall Word, Arnett, for plaintiffs in error.

Savage, Gibson, Benefield & Hart, Oklahoma City, for defendants in error.

Horace B. Clay, Tulsa, W. L. Houts, F. M. Houts, and L. Z. Lasley, Alva, W. Perry Dornaus, Tulsa, and Bryan Billings, Woodward, amici curiae.

GIBSON, J.  Plaintiffs in error were defendants in the trial court and will hereinafter be called "grantors.".  Defendants in error were plaintiffs below and will be called "grantees".

Grantors held title to land in Ellis county and executed a real estate mortgage in favor of Federal Land Bank of Wichita, Kansas. Thereafter grantors executed mineral deeds to one Blakenship, who in turn conveyed to grantees. Subsequent to such conveyances Federal Land Bank prosecuted to conclusion a foreclosure of its mortgage and became purchaser at the sheriff's sale in the foreclosure proceedings.  All grantors and grantees, or those in privity, were named as defendants in the action.  The Bank conveyed to another Federal agency, the Federal Farm Mortgage Corporation.  On June 13, 1946, and four years after issuance of the sheriff's deed, the Corporation conveyed by warranty deed to the grantors, the former owners, reserving an undivided one-fourth in the minerals. Grantees thereafter began the present action to quiet title as to their combined one-half interest in the minerals which had been conveyed by grantors in the mineral deeds. The trial court rendered judgment for the grantees and grantors appeal.

The case was tried on agreed stipulations of facts.  The stipulations do not recite the amounts of consideration paid in any of the foregoing transactions, and we must assume a valuable consideration in each transaction.  There is no contention of fraud by any party against the others.  The grantors originally held title to the lands by virtue of a patent from the United States.

The mineral deeds contained a warranty of title.  In the stipulations the records of the county clerk, by reference, were admitted in evidence, but no copy of the mineral deeds appears in the record.  We shall therefore as-

sume that it was in a form sufficient to meet the requirements of the statute with reference to warranty deeds, 16 O. S. 1951 §19.

In the foreclosure proceedings the grantees filed a disclaimer, hereinafter discussed.

It is conceded that grantees knew and are bound to have known of the existence of the prior mortgage to the Bank.

Solution of all issues raised in this appeal rests on the interpretation and application of the statute with reference to an after-acquired title as applied to the factual set-up of the case. The statute, 16 O. S. 1951 §17, reads:

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be."

All counsel appearing assert that the precise question presented here, involving as it does the judicial sale in foreclosure proceedings and the disclaimer of the grantees, intervening between the first ownership by grantors and the subsequent purchase of the property by them, has not been decided by this court.

Probably the most accurate summary of the problems before us is stated as a proposition by one group of attorneys appearing amici curiae, as follows:

"Where land is purchased after foreclosure by a mortgagee who thereafter conveys to the mortgagor, does the title so acquired operate as a new, separate and independent title in the mortgagor, or is it an after-acquired title accruing to the benefit of a prior grantee of mortgagor?"

Grantors say that there are two divergent and conflicting theories pertaining to the effect of a real estate mortgage, one being the theory that the mortgage constitutes a lien upon the property with the legal and equitable title remaining in the grantors, and the other, the title theory, wherein the legal title is regarded as vested in the mortgagee, and that in such jurisdictions the grantor in a subsequent deed conveys only the equitable title until the legal title is revested in him or his grantor by redemption of the mortgage. Therefore it is said that cases from courts following the title theory hold that an after-acquired title vests in the owner's grantee, since the owner at the time of his conveyance did not have a full legal title. And it is further said that no decisions from such states are applicable here since Oklahoma has adopted the lien theory. It is further said that grantors held full legal and equitable title at the time that they executed the mineral deeds and hence there was no other title to be acquired and the statute cannot apply in this case. They further say that following the foreclosure sale in which the titles of both grantors and grantees were cut off, the title acquired by grantors from the Bank's grantee was a new, separate and independent title and was not to be disturbed by the statute with reference to an after-acquired title.

This argument is intriguing but not persuasive. If we were inclined to follow it we could not do so in this case because it is predicated upon an inaccurate premise. One of the counsel asserts that the grantors held a "perfect" title because they held a patent from the Government. Another counsel says grantors had a full legal and equitable title for the same reason.

We cannot agree that the grantors held either a "perfect title" or a "full legal and equitable title" at the time they executed the mineral deeds.

"A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record." Campbell v. Harsh, 31 Okla. 436, 122 P. 127.

See Pearce v. Freeman, 122 Okla. 285, 254 P. 719.

"The defendant is guilty of a breach of his written contract to convey a good

title to an undivided royalty interest created by an oil and gas lease, where the defendant tenders such royalty interest subject to a prior, valid, existing real estate mortgage." Sipe v. Greenfield, 116 Okla. 241, 244 P. 424.

We agree that Oklahoma is committed to the "lien theory" of mortgages but the lien of a real estate mortgage is an encumbrance; it is a subject of litigation; it would prevent an owner from conveying a perfect title on any given day. In this case it was a sufficient encumbrance or a lack of title of such magnitude as to cause both grantors and grantees to lose their property in the subsequent foreclosure.

Grantors cite cases wherein we have upheld the application of the statute in various situations: Brown v. Barker (1912) 35 Okla. 498, 130 P. 155; Weaver v. Drake (1920) 79 Okla. 277, 193 P. 45; Holleman v. Cushing (1921) 84 Okla. 156, 202 P. 1029; Barnes v. Morris (1924) 105 Okla. 17, 231 P. 466; Brady v. McCrory (1925) 108 Okla. 40, 233 P. 734.

Conceding that the after-acquired statute was interpreted in favor of the grantee or mortgagee, the grantors say that in all these cases the grantor had an imperfect title or less than a full title and the statute was applicable in such cases. To us all such cases are significant in that they establish that this court has consistently invoked the doctrine of estoppel against one asserting an after-acquired title as being superior to the title which he had warranted and covenanted to defend.

Grantors as plaintiffs in error place great reliance on the case of Schultz v. Cities Service Oil Co., 149 Kan. 148, 86 P. 2d 533. The facts of that case are practically identical with those in the case before us, and the covenants of warranty nearly the same. The Kansas court held that where a mortgagor executed a mineral deed with a covenant of warranty to an oil company and the mortgage was foreclosed forever barring all rights of the mortgagor and oil company and a sheriff's deed went to a third person, the mortgagor obtaining title from such third person is not estopped in an action to quiet title by the covenant of warranty in the mineral deed from claiming full title to the property as against the oil company. It was further held that the statute with reference to an after-acquired title does not apply to the title acquired from an independent source after the conveyance containing the warranty is set aside or rendered nugatory by judicial decree.

The Supreme Court of Montana in Rowell v. Rowell, 119 Mont. 201, 174 P. 2d 223, followed the rule of· the Schultz case in holding that the subsequent acquisition of title was a new and independent title and that the statute did not apply in such case.

We think that the Kansas and Montana decisions express the minority view. In view of what we conceive to be the majority rule, sustained by the weight of authority, and in conformity with our former decisions, we cannot accept the construction of the lien theory presented by the grantors nor can we follow the Kansas and Montana cases. While it is true that we find no decision by this court in which all of the facts presented in this case were before the court we have passed on cases bearing a close analogy.

We have applied the statute or invoked the doctrine of estoppel by deed as against the grantor:

(1) Where the grantor at the time of his warranty had no title or an insufficient title and later acquired a better title. Brown v. Barker, supra; Holleman v. Cushing, supra; Yamie v. Willmott, 184 Okla. 382, 88 P. 2d 325; Hooks v. Canadian Holding Co., 133 Okla. 275, 272 P. 366.

(2) Where the after-acquired title was obtained as a result of tax sale proceedings. Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, and cases therein cited.

(3) Where the grantee was the holder of a mortgage and grantor later ac-

quired a title through or after the fore-closure of a senior mortgage. Core v. Smith, 23 Okla. 909, 102 P. 114.

It is the general rule, supported by decisions from a substantial majority of the states, that a deed purporting to convey a fee-simple title or a lesser definite estate in land and containing covenants of general warranty of title, will operate to estop the grantor from asserting an after-acquired title or interest in the land as against the grantee and those claiming under him. Sec. 58 A. L. R. at page 350.

In Holleman v. Cushing, supra, we said:

"It is the general rule that if a grantor, having no title or a defective title or an estate less than that which he attempts to grant, conveys by warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit, by way of estoppel. Brown et al. v. Barker, 35 Okla. 498, 130 P. 155; 16 Cyc. 689; 8 R. C. L. 1058; 21 C. J. 1074; Wholey v. Cavanaugh, 88 Cal. 132, 25 P. 1112; Tupy v. Kocourek, 66 Ark. 433, 51 S. W. 69; Douglass v. Scott, 5 Ohio 195; Armstrong v. Portsmouth Building Co., 57 Kan. 62, 45 P. 67."

The parties here are in the same situation as were the litigants in Scott v. Cohen, 115 Fed. 2d 704, wherein the Circuit Court of Appeals, Fifth Circuit, held:

"Where warranty deed to undivided one-half interest in minerals was subject to outstanding trust deed from grantor to third party, and subsequently the trust deed was foreclosed and the property was sold and was then reacquired by grantor, the after-acquired title to one-half the minerals, under Texas law, vested in the grantee."

The State of Georgia has a statute governing after-acquired titles, and that state adheres to the rule announced above. Perkins v. Rhodes, 192 Ga. 331, 15 S. E. 2d 426.

We need not lengthen this opinion by additional citations from other jurisdictions. Our research convinces us that in this opinion we are supported by the weight of authority.

In Burnett v. Cole, supra, we said:

"The owner of the surface of real estate in whose name the land is assessed is obligated to pay the taxes thereon, and if he fails to do so, and the land is sold for taxes, he cannot obtain title from said tax sale purchaser and defeat the owner of the coal rights separately owned but not separately assessed of his interest, but his purchase as between said parties is deemed a mode of paying the taxes."

It is true that we were there dealing with a title acquired under a tax sale. But if it was the owner's duty and obligation to pay his taxes, it was also the duty of grantors in this case to pay the mortgage indebtedness if they would comply with the obligation of their warranty. Wallace v. Brooks, 194 Okla. 137, 147 P. 2d 784.

In Core v. Smith, supra, we were dealing with a case where the grantor owned land encumbered by a first mortgage. He later executed a second mortgage to Core as mortgagee. The first mortgage was foreclosed, the mortgagee purchasing at sheriff's sale. Thereafter he sold the property back to Blakley, the original owner. He then conveyed to Smith, the defendant in error. Smith filed a suit to quiet title and prevailed in the trial court. On appeal this court reversed the judgment with instructions.

Therein we said:

" . . . The facts disclose that Blakley bought the land in controversy subject to the Miebergen mortgage, and thereafter mortgaged it to Core. He was under equal obligation to pay them both, and should not be permitted in equity and good conscience to deal with either so as to destroy the lien of the other. Neither should he for the same reason, or his subsequent grantee of the land, defendant in error Delmar A. Smith, be permitted to found a right upon his own default.

" * * *

" . . . So long as the mortgage debt is unpaid, the mortgagor can no more acquire title, so as to defeat the mortgage lien founded upon his default in that part of the condition, than upon a default in any other part of it.

" * * *

"And so it would seem that defendant in error Blakley and Delmar A. Smith, his grantee, are not only estopped from setting up the title in the mortgaged premises thus acquired by Blakley from Miebergen, as against the Core mortgage, for the reason that the same is founded upon the default of Blakley, the mortgagor, but also for the reason that his purchase of that title operated as a payment and extinguishment of the Miebergen mortgage, leaving the mortgage of Core the first lien upon said land, and we shall so hold,"

If one having given his warranty cannot evade his obligation to protect his grantee from a sale of property for taxes, by purchasing the property from the purchaser at a delinquent tax sale, we cannot see how one can evade his obligation to protect his grantee from a mortgage by permitting a mortgage to be foreclosed and then repurchasing the same from a purchaser at a foreclosure sale.

If one cannot evade his obligation under his warranty to protect his grantee in a second mortgage from forfeiture of his security by permitting a foreclosure sale under a first mortgage and then repurchasing from the purchaser at a sheriff's sale, we cannot see how one can evade his obligation to protect his grantee, in a mineral deed, by permitting a mortgage to be foreclosed and repurchasing the property from the purchaser at a sheriff's sale.

In the instant case there is no contention of fraud, but if we were to hold that, under the facts of this case, the grantor acquired a new and independent title free from the obligation of his covenant to defend against all lawful claims, such decision could easily open the door to fraud in future transactions.

This court, under its former decisions, is committed to the philosophy of the law that a grantor is estopped from asserting an after-acquired title as against his grantee to whom he has given a warranty of title, no matter what conduit or circuity of conveyancing the title may pass through in returning to the grantor.

In the foreclosure action the grantees herein filed a general disclaimer of any right, title or interest in and to the property involved and asked to be discharged without costs. In the instant case grantors plead that by reason of such disclaimer the grantees, as plaintiffs, are now estopped to set up any claims adverse to the right, title and interest of defendant grantors.

We find no decision by this court on the subject.

For a definition of "disclaimer" grantors cite 26 C. J. S. 1331, setting forth various holdings by the courts which serve to advise us that definitions by the courts are not uniform. Investors' Utility Corporation v. Challacombe (Tex. Civ. App.) 39 S. W. 2d 175, and other cases are cited, holding that a disclaimer is a denial of title by the one who disclaims. This recital is only a part of the definition given. The office, purpose and function of a disclaimer, authorized by our statute, 12 O. S. 1951 §926, is to admit plaintiff's claim, set forth in the petition and to permit the disclaimant to be discharged with his costs.

" . . . A disclaimer is not an answer or defense plea, but it is an admission of plaintiff's rights, Tull v. Wilbarger County (Tex. Civ. App.) 36 S. W. 2d 316; and a judgment thereon would not have the effect of finding or establishing anything in the defendant's favor. . . " Hansen v. Holland (Tex. Civ. App.) 65 S. W. 2d 510.

Grantees having been served with process in the foreclosure action instituted by a plaintiff bank, recognized the superiority of plaintiff's lien and refused to contest with plaintiff. In order to escape liability for costs, they

filed a disclaimer and asked to be discharged without costs. But the filing of the disclaimer was in response to plaintiff's petition and to that alone. The disclaimer conferred no rights upon the grantors, as defendants in that action.

Assume that, following the filing of the disclaimer, the grantors had redeemed by payment of plaintiff's claim, and thereupon the foreclosure action had been dismissed. Could it be contended that the grantors took back the land, free of the grantees' mineral deed, and that the filing of the disclaimer deprived the grantees of their rights under the deed? We think not. In such a case it is clear that the grantors would have done nothing more than to clear the title of the mortgage lien,—an obligation they had assumed under their covenant and warranty in the mineral deed.

The disclaimer was not a conveyance to the defendant grantor or to any other person. Grantor was asserting no claim against the grantee in the foreclosure action and the disclaimer was not a response to any pleading filed by the grantor. In fact, the grantor did not appear, but permitted a judgment by default. The whole purpose and office of the disclaimer in the foreclosure action was to serve as a response to plaintiff bank's claim of a superior title and permit grantees to escape liability for costs.

There is no evidence or stipulation in the record that grantors relied upon the disclaimer or were misled to their prejudice by the disclaimer when they repurchased the property.

Our statute, R. L. 1910, §5227, 12 O. S. 1951 §926, was taken from the laws of Kansas and had been construed by the Kansas court prior to its adoption in Oklahoma. In Kansas Pac. Ry. Co. v. McBratney, 12 Kan. 9, in an opinion by Justice Brewer, it is said:

" . . . But the statute comes in and attempts to determine the effect of a formal disclaimer; that is, to give to the party disclaiming his costs, unless for special reasons the court decides otherwise. Code, sec. 587. It would seem from this that a disclaimer was not to be treated as raising any issue for trial, or interposing any objection to the granting of the relief prayed for, but as simply asking to be relieved from all costs. If a party desired a trial on the question of possession, a denial of possession would present the issue, and upon that issue the verdict would carry costs as a matter of right. If he filed no answer, the default would give to the plaintiff costs as well as the specific relief prayed for. By a disclaimer he would not prevent the plaintiff from obtaining the relief prayed for, but would save himself from all costs. Such seemed to us the purpose of the Legislature in the section cited; and, though the matter be not free from doubt, we are disposed to adhere to our former ruling."

The former holding mentioned is found in Kansas Pac. Ry. Co. v. McBratney, 10 Kan. 415.

We feel bound to follow this construction.

We cannot hold that the doctrine of estoppel, by the disclaimer, operates to defeat grantees' claim in this case.

Affirmed.

HALLEY, V. C. J., and DAVISON, JOHNSON, and BINGAMAN, JJ., concur. WELCH, CORN, and O'NEAL, JJ., dissent.