John J. **CALLAHAN**, as Trustee for the Stockholders of Cal-Cul Oil Company, a dissolved, defunct and cancelled corporation, and as Trustee for such dissolved, defunct and cancelled corporation, Plaintiff,

v.

Marion C. **STEWART** et al., Defendants.

Civ. No. 5120.

United States District Court
E. D. Oklahoma.

June 29, 1964.

Martin, Logan, Moyers, Martin & Conway and Robert S. Rizley, Tulsa, Okl., for plaintiff.

Smith & Inglish, Okmulgee, Okl., Tom Brown, Tulsa, Okl., for Sam K. Viersen, Central National Bank, Okmulgee, Edith Terry, Daisy Viersen, Patsy Viersen Brown.

Charles L. Orr and John Patterson, Oklahoma City, Okl., for Charles L. Orr, A. M. Woodford, and Sultan Oil Co.

Charles E. Jackson, Pauls Valley, Okl., for Constance G. Jackson.

Brown & Brown, Oklahoma City, Okl., for Marion C. Stewart, Barbara M. Creager, Marlene Kearley, Warren J. Hancock, W. N. Bartlett, Bob Hancock, Barter Island Oil Co., Yale Oil Ass'n, Inc., Woods Petroleum Corp.

W. L. Barber, Lindsay, Okl., for Clifford M. Roland.

DAUGHERTY, District Judge.

This is a quiet title suit involving primarily the equitable doctrine of estoppel by deed.

Della M. Roland was the owner of a 140-acre tract of land in McClain County,

Oklahoma. Joined by her husband, Fletcher M. Roland, she conveyed an undivided one-half mineral interest in said land in 1929 to the Cal-Cul Oil Company, an Oklahoma corporation. This conveyance contained covenants of warranty of title. In 1931 she and her husband conveyed an undivided two-sevenths mineral interest in said land to the Rogers Oil and Gas Company. This conveyance also contained covenants of warranty of title. At the time of both of the above mineral conveyances the land was mortgaged to the Kansas City Life Insurance Company, both Della M. and Fletcher M. Roland signing the note and mortgage involved.

Cal-Cul was adjudged a bankrupt in 1933 and a Trustee was elected in the bankruptcy proceeding in the same year.

In 1936, a Sheriff's deed was executed to the Kansas City Life Insurance Company covering the 140-acre tract as a result of a mortgage foreclosure proceeding brought by it on the aforementioned note and mortgage. Cal-Cul, Rogers Oil and Gas Company and its Grantees, Orr and Woodford, who had acquired a part of the Rogers interest, and the Trustee in bankruptcy of Cal-Cul along with the Rolands, were all parties defendant in this mortgage foreclosure suit.

In 1937, the said Trustee in Bankruptcy sold and conveyed by Trustee's deeds all of the assets of the bankrupt Cal-Cul Oil Company to parties we will call herein the Viersen group, all of whom are defendants herein. This was accomplished by several documents, one in the general language above mentioned, and others specifying properties by legal description, in one of which latter conveyances was included the above described one-half mineral interest of Cal-Cul in the property here involved notwithstanding this interest had been foreclosed in the Kansas City Life Insurance Company mortgage foreclosure proceeding during the previous year.

In 1939, the Kansas City Life Insurance Company by warranty deed conveyed the surface and minerals in the 140-acre tract to B. C. Williams.

In 1943, as the result of a demand from the said B. C. Williams, the Viersen group executed to him a quitclaim deed covering the said Cal-Cul undivided one-half mineral interest in the subject property. B. C. Williams made this demand to remove a cloud on his title created by the said Trustee's conveyance in which one-half of the minerals under said 140-acre tract was specifically described and conveyed to the Viersen group after the Sheriff's deed had issued in the mortgage foreclosure suit to Williams' predecessor in title and this purpose for the quitclaim deed was recited in the instrument.

Thereafter, in 1947 and 1949, F. M. Roland, the same person as Fletcher M. Roland above mentioned, acquired title to a total of 22.34 acres of minerals in the said 140-acre tract. Following this acquisition F. M. Roland conveyed portions of this 22.34 acre mineral interest to certain of the defendants herein. He then died in 1951, still owning a portion thereof, and his heirs are also defendants herein as to said remaining portion.

Cal-Cul lost its corporate powers by a suspension and forfeiture order of the Secretary of State of Oklahoma in 1937 for failure to pay the fee required of it by Oklahoma law. At the time of such forfeiture the plaintiff, John J. Callahan, was one of its stockholders and directors and was the last managing officer of Cal-Cul Oil Company. He brings this suit pursuant to law (68 Oklahoma Statutes Annotated § 623), as Trustee for such defunct and cancelled corporation for the benefit of its creditors and stockholders. The total Rogers Oil and Gas Company interest is now owned by the defendants, Charles L. Orr and A. M. Woodford, who took their respective interests in 1931 and W. G. Rogers, who took his interest in 1945, all hereinafter called the Orr group. They obtained their respective interests from Rogers Oil and Gas Company by warranty deed.

The plaintiff as such Trustee for Cal-Cul claims that Cal-Cul is entitled to have its title quieted in the entire 22.34 acre mineral interest on the

grounds that F. M. Roland, with his wife, warranted title to it in the above mentioned conveyance in 1929, and later reacquired title to the said 22.34 acre mineral interest which inured to its bene- fit under the equitable doctrine of estoppel by deed or after acquired title. The plaintiff further asserts that the Trustee's conveyances to the Viersen group did not transfer this contingent equitable right (the equitable right of estoppel by deed) inasmuch as said conveyances contained no covenants of warranty; that the Viersen group not having acquired this said right, could not and did not convey it by their subsequent quitclaim deed to B. C. Williams. Further, that plaintiff is entitled to the entire 22.34 acre mineral interest as against the Orr group, successors in title to the said mineral conveyance to the Rogers Oil and Gas Company, since the conveyance to Cal-Cul was prior and the 22.34 acre mineral interest is less than the 70 acre mineral interest (the undivided one-half mineral interest in 140 acres) it purchased in 1929.

The Viersen group claims that the said contingent equitable right (the equitable right of estoppel by deed) did pass by and with the said Trustee's conveyances to them by reason of the Rolands' covenant of warranty of title being a covenant running with the land and the said equitable right being incident thereto is transferable by any kind of conveyance or succession. The Viersen group then contends, however, that this does not apply to their quitclaim deed conveyance thereafter made to B. C. Williams, since under the facts and circumstances of said conveyance it amounted to only a disclaimer of interest which did not defeat their right and ability to claim the possession and ownership and benefits of said equitable right of estoppel by deed when F. M. Roland acquired said 22.34 acre mineral interest.

The Orr group contends that the Cal-Cul Trustees' contingent equitable right to assert the doctrine of estoppel by deed is a part and parcel of a covenant running with the land and was transferred to the Viersen group by the Trustee's conveyances and was likewise transferred by the Viersen group to B. C. Williams who then owned the fee simple title, thus placing everything including this said right in B. C. Williams, with the resulting effect of then extinguishing the same. Further, that by this extinguishment of the said contingent equitable right originally belonging to the Trustee of Cal-Cul they (the Orr group) assumed first priority to the after-acquired 22.34 acre mineral interest purchased by the said F. M. Roland and that their said forty acre mineral interest (an undivided two-sevenths of 140 acres) obtained in 1931 from F. M. Roland and wife, entitles them to have title quieted in them in and to the entire said 22.34 acre mineral interest.

The plaintiff, the Viersen group, and the Orr group, all assert that the defendant grantees of F. M. Roland after he acquired the said 22.34 acre mineral interest and the heirs of F. M. Roland upon his death have no right or title to any of said 22.34 acre mineral interest because the same passed to them by operation of law immediately upon F. M. Roland's acquiring the same, and that title therefore should be quieted against said grantees and heirs of F. M. Roland, and all of them.

The said defendant grantees and heirs of F. M. Roland claim that Della M. Roland was the sole owner of the said 140 acre tract at the time of the said mineral conveyances to Cal-Cul and the Rogers Oil and Gas Company; that F. M. Roland, under whom they claim, only joined therein by reason of being the husband of Della M. Roland, and that his subsequent individually acquired title to the said 22.34 acre mineral interest is not subject to the doctrine of estoppel by deed, or that the covenants of warranty of title in the said conveyances to Cal-Cul and Rogers Oil and Gas Company did not and do not now apply to him.

■ Turning now to the law of this case, it appears that the Oklahoma case of Equitable Royalty Corporation et al. v. Hullet et al. (1952), 206 Okl. 233, 243,

P.2d 986, clearly disposes of the claims made herein by the defendant grantees and heirs of F. M. Roland. It seems to be the settled law of Oklahoma that one joining in a covenant of warranty of title will be burdened with all its effects notwithstanding a lack of actual property ownership at the time of making the said covenant of warranty of title. In the above case the Oklahoma Supreme Court said:

"It is claimed by the defendants that Pauline M. Hullet is not bound by the covenants of warranty in the mineral deed, because she signed only as the wife of her husband. * *

" 'The joint makers of a deed are severally liable on the covenants thereof, at least where such covenants contain no words of severalty.' * * *

"The mineral deed under which plaintiffs claim title was executed by Pauline M. Hullet with full covenants of warranty, while the mortgage liens were in existence. She afterwards acquired the title growing out of the mortgage foreclosure. * * *

"We conclude that when she reacquired title, which she had lost by the foreclosure proceedings, she came clearly within the doctrine of estoppel by deed, and could not escape her solemn promise to warrant and forever defend the title she had conveyed to plaintiffs."

31 C.J.S. Estoppel § 13, page 298, states:

"A person who assumes to convey an estate by deed, or his successor, is estopped, as against the grantee, or those in privity with him, to assert anything in derogation of the deed; he will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance. So, a grantor is estopped by his deed

to question the capacity of his grantee to take the estate conveyed. * * A warrantor of title may not question the validity of the title warranted, nor may he assert an outstanding hostile title. One who creates estates by deed is estopped to utilize the doctrine of merger to destroy or alter rights so created."

Thus, the equitable doctrine of estoppel by deed operated against F. M. Roland herein and if the plaintiff or the Viersen group or the Orr group is entitled to the benefit of its operation and result herein then the defendant grantees and heirs of F. M. Roland cannot prevail against any of them.

The issues are therefore narrowed to a consideration and study of the right of estoppel by deed or to claim renewed title through an after acquired title by a title warranting grantor. This contingent equitable right or interest probably came into being in this case at the time of the mineral conveyances to both Cal-Cul and Rogers Oil and Gas Company since at such times the Roland title was burdened with the Kansas City Life Insurance Company mortgage and their title warranty was defective. Certainly this right pertaining to the property involved came into positive existence when the Rolands defaulted in their covenants of warranty of title originally made to Cal-Cul and Rogers Oil and Gas Company by failing to pay the existing mortgage against their said property and permitting the same to be foreclosed by the Kansas City Life Insurance Company, the mortgagee, and such right asserted itself by operation of law at the time F. M. Roland acquired title to the said 22.34 acre mineral interest in 1947 and 1949. At the time of foreclosure it would seem that this right or interest in the property became separated from the property—at least it could not have passed to the Kansas City Life Insurance Company by the Sheriff's Deed in the foreclosure proceeding but must have vested in or remained in the Trustee of Cal-Cul and the Rogers Oil and Gas Company and its then grantees to a part of

its original mineral interest. Of particular importance in this study is the determination then of whether this said contingent equitable right or interest after it comes into being and is separated from the property can be transferred by its owner and if so must it be transferred by its owner only by a conveyance containing covenants of warranty of title, or can it be transferred by its owner by a conveyance such as a trustee's deed or a quitclaim deed, neither of which contains covenants of warranty of title. It is also pertinent to consider if specific intent is material in any such conveyance of this right or interest and if it will pass with a conveyance "of all the assets" or of the described property to which it pertains.

■ The equitable doctrine of estoppel by deed is well recognized in Oklahoma as shown by the following cases:

In Equitable Royalty Corporation et al. v. Hullet et al., supra, the Oklahoma Supreme Court said:

" 'Estoppel by deed is a bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it. Estoppel by deed is technical in nature, and such an estoppel may conclude a party without any reference to the moral qualities of his conduct.

\* \* \* \* \* \*

" 'To constitute an estoppel by deed, a distinct and precise assertion or admission of a fact is necessary. Hence, an estoppel by deed or similar instrument can arise only where a party has conveyed a precise or definite. legal estate or right by a solemn assurance which he will not be permitted to vary or deny. Such estoppel should be certain to every intent.'

"This doctrine has been adopted into our statutes as Sec. 17, 16 O.S. 1951, as follows:

" 'All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be.'

\* \* \* \* \* \*

"In order that a deed may give rise to an estoppel, it must contain representations or covenants;
\* \* \* "

In Lucus et al. v. Cowan et al. (Okl. 1960), 357 P.2d 976, the Oklahoma Supreme Court said:

"It is settled law in Oklahoma that a grantor who conveys a mineral interest in land under warranty of title, which land is subject to a mortgage and which the grantor is obliged to satisfy, but thereafter permits the property to be sold at a mortgage foreclosure, subsequent reacquisition of such property by said grantor operates to revest immediately the afteracquired title in grantee and will inure to his benefit."

And in Weaver v. Drake (1920), 79 Okl. 277, 193 P. 45, the Oklahoma Supreme Court said:

"The grantor of an estate in fee simple may thereafter be estopped from denying that he conveyed such an estate, and this on the principle that when a man has by his deed averred or affirmed or covenanted, or by his act admitted that a fact is true, he shall not afterwards be permitted to deny or contradict or disprove it.

"Whatever may be the form or nature of the conveyance used to pass real property, if the grantee sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed,.

either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seised and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between parties and privies.

"Where the deed recites or affirms, expressly or impliedly, that the grantor is seised of a particular estate which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to his vendee, although the deed contains no covenant of warranty at all. And the rule accords with common honesty and fair dealing."

In our case, the mineral deeds from Della M. and Fletcher M. Roland to Cal-Cul and Rogers Oil and Gas Company contained covenants of warranty of title. When the Rolands allowed the existing Kansas City Life Insurance Company mortgage to be foreclosed and the property sold thereunder, they breached their covenants of warranty of title originally made to Cal-Cul and Rogers Oil and Gas Company. When this breach of warranty occurred in 1936 a positive right vested in favor of the Trustee in Bankruptcy for Cal-Cul and the Rogers Oil and Gas Company (and its two grantees, Orr and Woodford) to assert and claim estoppel by deed should the Rolands, the title warrantors, ever in the future come again into possession of title, or any part thereof.

■ It appears that under the law of Oklahoma this contingent equitable right or interest pertaining to the property involved may be transferred by its owner.

First 60 O.S.A. § 2 provides:

"Ownership, what subject to.—

"There may be ownership of * * rights created or granted by statute."

In this connection, the Oklahoma Supreme Court in Equitable Royalty Corporation et al. v. Hullet et al., supra, held that the doctrine of estoppel by deed has been adopted into the statutes of Oklahoma by 16 O.S.A. § 17.

60 O.S.A. § 313 provides that:

"A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office."

14 Am.Jur., Section 40, page 514, states that rights of action arising from breach of contract are assignable and may be enforced by the assignee in his own name.

26 C.J.S. Deeds § 118, page 948, states:

"An after-acquired legal title will inure to the grantee in a quitclaim of an equitable interest, the equitable interest having existed in the grantor and passed with the deed."

And at page 949, states:

"A contingent interest may pass by a quitclaim deed; * * *."

■ It thus appears that this right is capable of ownership and being born from a breach of warranty of title is assignable. There appears to be no prohibition against the transfer of such a right. It is also clearly indicated that this right may be transferred or conveyed by a quitclaim deed or a conveyance not containing covenants of warranty.

In connection with a quitclaim type conveyance 16 O.S.A. § 18 provides:

"A quitclaim deed, made in substantial compliance with the provisions of this chapter, shall convey all the right, title and interest of the maker thereof in and to the premises therein described."

The case of Boylan et al. v. Lillard (CCA–10th), 174 F.2d 572, holds that a quitclaim deed passes everything then owned by the grantor and that a declara-

tion of purpose for which the conveyance is made, without more, does not limit the estate granted.

16 O.S.A. § 41, prescribing the form of quitclaim deed, reads as follows:

"A quitclaim deed to real estate may be substantially the same as a warranty deed, with the word 'quitclaim' inserted in connection with the words 'do hereby grant, bargain, sell and convey,' as follows: 'Do hereby quitclaim, grant, bargain, sell and convey,' and by omitting the words, 'and warrant the title to the same.' R.L.1910, § 1185."

In Tucker v. Leonard (1919), 76 Okl. 16, 183 P. 907, the Oklahoma Supreme Court said:

" 'We conclude that there is no authority for the proposition that a quitclaim deed in the chain of title deprives him who claims under it of the character of a bona fide purchaser. There are dicta and suggestions and inferences to that effect, but we deny and repudiate the proposition as unsound, and insupportable on authority, principle, or policy.' * *

"The quitclaim deed executed by the defendant Leonard was just as effective in conveying the title purchased by him at the guardian's sale, as if he had executed a warranty deed. In other words, one can be a bona fide purchaser under a quitclaim deed where the vendor undertakes to sell and convey the land described in the deed, as he can under a warranty deed, the difference in form between a quitclaim deed and a warranty deed being that in the former the words 'and warrant the title to the same' are omitted. A quitclaim deed made in substantial compliance with the provisions of chapter 13, R.L.1910, conveys all of the right, title and interest of the maker thereof in and to the premises therein described. Section 1161, R. L.1910."

The Kansas Supreme Court in Johnson v. Williams, 37 Kan. 179, 14 P. 537, held as follows:

"In this state a quitclaim deed to land will convey to the grantee all the rights, interests, title, and estate of the grantor in and to the land, unless otherwise specified by the deed itself. * * * Such deed will convey such of the covenants of former grantors as run with the land, * * and the grantee in the quitclaim deed will be entitled to such further title or estate as may inure at any time to the grantees of such former grantors by virtue of such covenants as run with the land. * * * But a quitclaim deed will not estop the maker thereof from afterwards purchasing or acquiring an adverse title or interest, and holding it as against his grantee."

It is also pertinent to observe that in Oklahoma covenants of warranty of title are not personal but run with the land. The case of Arnold v. Joines, 50 Okl. 4, 150 P. 130, so holds, as follows:

"Counsel for plaintiff in error was simply following some of the old mysterious and hazy theories, concerning which there is a very great variety of opinions as to the different kinds of covenants, and as to whether they run with the land or are simply personal; but these old troublesome questions are swept away by the statutes and decisions above referred to, and the covenant of general warranty provided for by the laws in this state binds the grantor to warrant and forever defend the title to the grantee, his heirs and assigns, and by this is meant a covenant which accompanies a conveyance of the land and passes from one purchaser to another through each successive link of the chain of title.

"The language in the deed is plain; the statutory construction (section 1162) is plain; and the opinion of Justice Sharp is a full

and fair exposition of the law on that subject, and places the stamp of disapproval upon the contention of plaintiff in error that the covenants of warranty embodied in the deeds involved in this case do not run with the land, and clearly settles the law in this state, to the effect that, under a warranty deed made in substantial compliance with the statutes, the covenants of warranty of title run with the land."

31 C.J.S. Estoppel § 54, page 359, states:

"An estoppel arising against a grantor may be urged by persons claiming under the grantee. The right of a grantee to assert an estoppel as to after-acquired property inures to those claiming under him; this is allowed, however, not because of privity between the grantee and the sub-grantee, but because the covenant of warranty in the original deed runs with the land."

The Missouri Supreme Court in Johnson et al. v. Johnson, 170 Mo. 34, 70 S.W. 241, 59 L.R.A. 748, held as follows:

"Where a grantor under a deed containing covenants of seisin did not hold a valid title to the interest attempted to be conveyed at the time the deed was executed, but thereafter acquired the same, such covenant ran with the land, and the after-acquired title inured to the person holding under the first grantee, however remote from him in the line of title, without regard to the fact that an intervening deed was a quitclaim conveying only the grantor's right, title, and interest in the land."

In the case at bar it would seem that this right or interest at the time of the Sheriff's deed remained with the Trustee of Cal-Cul and Rogers Oil and Gas Company and its grantees and did not pass with said Sheriff's deed. However, this right or interest grows out of the covenant of warranty of title and could be said to be a part and parcel thereof, or at least possesses the features of a covenant of warranty of title from which it springs. Such being the case it should have the attributes of such a covenant and when the owner of such right or interest thereafter conveys the land to which it pertains as did the Trustee of Cal-Cul and the Viersen group it would seem that such right or interest would run with or be included in the conveyance.

■ It also appears that the right of estoppel by deed is not personal to the original grantee but that such right may be asserted by one claiming under the original grantee. In Equitable Royalty Corp. et al. v. Hullet et al., supra, the Oklahoma Supreme Court quoted with approval the proposition that the grantee or those claiming under him could assert the right of estoppel by deed, as follows:

" 'It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple, or a lesser definite estate in land, and containing covenants of general warranty of title or of ownership, will operate to estop the grantor from asserting an after-acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him.' "

The Oklahoma Supreme Court in Hanlon v. McLain, 206 Okl. 227, 242 P.2d 732, applied the doctrine of estoppel by deed against a grantor of minerals with a warranty of title (there being the foreclosure of an existing mortgage) in favor of the grantee of the grantor's grantee. In the syllabus by the Court the Court said:

\* \* \* "[T]he after acquired title to one-half the minerals will inure to the grantee, or to his benefit, under the equitable doctrine of estoppel by deed."

■ Since Cal-Cul had been adjudged a bankrupt and a Trustee had been elected in 1933 to take possession of all the assets of Cal-Cul, the said Trustee, being in possession of the said mineral interest, came into possession of this right to

assert the doctrine of estoppel by deed when it came into positive being in 1936 by the breach of the covenant of warranty of title by the Rolands. See Vol. 4, Collier on Bankruptcy, Section 7037, p. 1295; 8 C.J.S. Bankruptcy §§ 194, 197, 198, 199, pp. 983, 995, 998; and Wilson, Trustee v. Holub (1926) 202 Iowa 549, 210 N.W. 593, 58 A.L.R. 646, which held that:

> "Although the title to real property may be in another, yet if the bankrupt has an interest in the property, that interest will be available to the trustee in the administration of the estate."

It does not appear that the Trustee abandoned this right in fact or by law. 8 C.J.S. Bankruptcy § 201b, p. 1011. Also see Hanlon v. McLain, supra, which held that one does not lose this right by filing a disclaimer in the mortgage foreclosure proceeding.

Since under Oklahoma law there appears to be no prohibition against the transferability of this right and Oklahoma law provides that all rights and interests then owned by the grantor will pass by a quitclaim type conveyance unless reserved therefrom, and if this right is considered as a part and parcel of or in the nature of a covenant of warranty of title the same would run with any conveyance covering the land, the Court concludes that this contingent equitable right or interest is capable of being transferred by its owner and will pass by a quitclaim type conveyance without any specific intent to convey the right or interest as such.

 It thus follows that this existent and alienable right possessed by the Trustee was transferred to the Viersen group by the trustee's deeds conveying all of the assets of Cal-Cul and the said undivided one-half mineral interest in the subject property.

It is true that the Trustee did not own the said undivided one-half mineral interest as such when he conveyed the same by description, but he did have and own this said contingent equitable right or interest therein and the Trustee conveyed the same to the Viersen group by his quitclaim deed of the mineral interest to which it pertained and as well by his blanket conveyance of all the assets.

 Likewise, when the Viersen group quitclaimed the said undivided one-half mineral interest in the subject property to B. C. Williams they conveyed this alienable right or interest in the property, notwithstanding the quitclaim nature of and the purpose for the conveyance because said conveyance was not limited to reserve this right or interest to the grantors nor is there any evidence herein of such an intent of reservation between the parties. Boylan et al. v. Lillard, supra. It becomes obvious then that by the above process the right to assert estoppel by deed and the fee simple title were both in B. C. Williams and the said contingent equitable right thereby became extinguished or merged in the fee simple title.

The covenant of warranty of title made to the Rogers Oil and Gas Company by the Rolands and the right to assert estoppel by deed created therefrom by the Sheriff's deed in the mortgage foreclosure sale passed from Rogers Oil and Gas Company to the defendants, the Orr group, since they run with the land, and the said right was still outstanding in the Orr group when R. M. Roland acquired the said 22.34 acre mineral interest in the subject property.

The Court therefore concludes that the equitable contingent right to assert estoppel by deed, which arose and came into positive and unquestioned existence in favor of the Trustee in Bankruptcy of Cal-Cul when the property involved herein was sold in mortgage foreclosure was passed by said Trustee to the Viersen group by the trustee's deeds. The Viersen group then in 1943 conveyed this right to B. C. Williams by their quitclaim deed, following which said right became extinguished since B. C. Williams was the fee simple title owner.

 The Court further concludes that the equitable contingent right to as-

sert estoppel by deed which came into existence in favor of the Orr group when the property involved herein was sold in mortgage foreclosure was in existence in them when F. M. Roland acquired the 22.34 acre mineral interest in the subject property in 1947 and 1949 and at the time of such acquisition this right by operation of law served to revest immediately the said after-acquired title in its entirety in the Orr group.

Such being the case, F. M. Roland possessed nothing to convey to his subsequent grantees with reference to said 22.34 acre mineral interest and nothing to pass to his heirs upon his death as to such mineral interest.

Therefore, title should be quieted in said 22.34 acre mineral interest in Charles L. Orr, A. M. Woodford and W. G. Rogers, in accordance with their respective interests therein. Counsel for the Orr group will prepare a judgment to this effect for the signature of the Court and entry herein.