### GILLAM et al. v. COLINE OIL CO.

No. 19138. Opinion Filed May 14, 1929.

Dolman & Dyer, for plaintiffs in error.

Rainey, Flynn, Green & Anderson, for defendant in error.

HERR, C. This is an action orginally brought in the district court of Carter county by J. Robert Gillam and E. O. Gillam against the Coline Oil Company, a corporation, to recover the sum of $5,344.98, which amount it is alleged was wrongfully charged to them as expenses in developing and operating an oil and gas lease, in which the parties were jointly interested. To this action, defendant, as a defense, pleaded a former judgment between the same parties as a bar thereto. The trial court sustained this plea and entered judgment in favor of defendant. Plaintiffs appeal.

It appears that on the 23rd day of February, 1921, plaintiffs were the owners of a three-fourths undivided interest in and to an oil and gas leasehold estate, in and to the north half of the northeast quarter of the northeast quarter of section 31, township 4 south, range 2 east, Carter county, and that on this date, by written assignment, they conveyed a one-half undivided interest therein to defendant, said plaintiffs retaining a one-fourth undivided interest. Said assignment contained the following stipulation:

"In the event oil or gas is found in paying quantities upon the land herein conveyed, the said Coline Oil Company agrees to properly complete the said well and equip the same, and to make such other and further development and to drill such other and further wells as necessary to protect and comply with the terms of the original lease and as business conditions justify.

"That the said the Coline Oil Company shall have control of the development and operations upon said lease premises, and shall keep a strict and accurate account of all materials used thereon and all moneys expended in connection therewith in the developing and operation of said property, and shall furnish each month a statement of the expenditures, together with copies of all invoices to the first party.

"Said party of the second part shall, if possible to do so, market the oil that may be produced from the said premises at the highest price obtainable, or if unable to market the same, place it in proper storage at such convenient place as can be acquired or provided.

"Out of the proceeds derived from the sale of the oil produced from said lease, the said the Coline Company shall reimburse itself for all expenses of development and operation of said property, and, on the 15th day of each month, shall make settlement with parties of the first part for any and all sums of money that may be due them under the terms of this contract. After the Coline Oil Company has reimbursed itself for all expenditures as above provided, the net revenues derived from the operation of the lease shall be divided equally, that is, the parties of the first part shall receive one-half of the

net revenues and the second party shall receive one-half of the net revenue. It is understood and agreed, however, that the overhead expenses connected with the operation of said property shall not exceed the sum of $250 per month."

Subsequent to this assignment, defendant acquired an additional one-fourth interest in and to said leasehold from Harry A. Miller, under a similar assignment, the defendant then being the owner of a three-fourths undivided interest therein.

It further appears that in June, 1922, plaintiffs mortgaged their remaining one-fourth undivided interest in said leasehold to the American National Bank of Oklahoma City to secure a loan in the sum of $10,000. Plaintiffs failed to meet this loan when due, and in March, 1924, the bank brought an action against them to foreclose its mortgage, to which action the Coline Oil Company, defendant herein, was made a party defendant.

The plaintiffs herein, and main defendants in the foreclosure action, answered by way of a general denial. The Coline Oil Company answered setting up its assignment, claiming a three-fourths undivided interest in and to the leasehold sought to be foreclosed, and alleged that its interest was superior to the interest claimed by plaintiff, and prayed that, in the event of a foreclosure, the rights of the plaintiff be deceed to be subject and inferior to its right, title and interest, and attached to its answer, as an exhibit, a copy of its deed of assignment. No affirmative relief was asked by this defendant against its codefendants Gillam, nor did said defendant set out any specific amount claimed by it as a lien against this leasehold for money advanced as operating expenses under the terms of the assignment. The allegation relative thereto is as follows:

"That said assignment marked 'Exhibit A' was duly filed for record in the office of the county clerk of Carter county. Okla., on February 25, 1921, and recorded in misc. book 51, at page 288; that the same has at all times since said February 25, 1921, been of record in said county clerk's office, and that ever since the execution and delivery of the same, this defendant has been and is now the owner of an undivided one-half interest in and to said leasehold estate, and entitled to all of the other rights, benefits and privileges in connection therewith conferred upon this defendant as operating interest and otherwise as expressed, described and declared in said instrument marked 'Exhibit A,' and that defendant has in all respects fully complied with the terms, obligation and conditions expressed and set out in said exhibit A."

This answer was subsequently amended by the oil company by alleging its interest to be a three-fourths undivided interest.

To the answer of this defendant, plaintiff American National Bank filed its motion, asking that the answer be made more definite and certain in that defendant be required to allege the amount claimed by it to have been advanced for developing and operating the lease and the amount for which it claimed a lien. This motion was never ruled upon by the court, but the same seems to have been abandoned by plaintiff. Subsequent to the filing of said motion, the plaintiff in that action filed its reply, wherein it denied that defendant oil company had a lien against the leasehold sought to be foreclosed, and further alleged that if any lien it ever had, the same was for money advanced for operating expenses, and that said company had fully reimbursed itself for any and all sums so advanced, and that said indebtedness and lien, if any defendant had, was fully satisfied and discharged, and that said lien should be released.

It is further alleged in said reply that defendant oil company charged large sums of money against the interest in said leasehold assigned to it by its codefendants. which were not properly chargeable as expenses of operation, and that if such erroneous charges should be deducted, the alleged lien of defendant would be entirely paid off and discharged.

Upon these issues the matter was submitted to the court, and on the 27th day of October, 1924, judgment was rendered against defendants Gillam, and the case continued as between plaintiff and defendant oil company until November 8, 1924. At this time. attorneys for defendants Gillam announced that no further defense would be made on behalf of said defendants, and as to this phase of the case the journal entry contains the following recital:

"It further appearing to the court that the only interest claimed by the defendant, the Coline Oil Company, in this action is in the form of a lien on the property sought to be foreclosed herein, and no issues having been raised as between said Coline Oil Company and the other defendants, and the defendant, the Coline Oil Company. having agreed in open court that the purpose of determining the amount of the lien of the said Coline Oil Company, if any, and the priorities as between the lien of the said plaintiff and the

said defendant, the Coline Oil Company, the case be continued to a subsequent date.

"It is ordered that this cause as to the said defendant, the Coline Oil Company, be continued over until the 8th day of November, 1924. Thereupon the attorneys for the defendants J. Robert Gillam and E. O. Gillam announced in open court that no further defense would be made on behalf of the said defendants J. Robert Gillam and E. O. Gillam."

Thereafter, and on November 8, 1924, the trial as between plaintiff bank and defendant oil company was resumed, resulting in a finding and judgment that defendant oil company had a lien against the leasehold interest sought to be foreclosed because of money advanced under the assignment in the sum of $8,022.13, and a decree to that effect was entered decreeing said lien superior to the lien of the plaintiff; and the interest of defendants Gillam in and to said leasehold was ordered foreclosed and sold subject to said lien. The property was subsequently sold at sheriff's sale to the plaintiff bank, subject to said lien, for the sum of $12,201, same being more than two-thirds of the appraised value thereof.

It is agreed between the parties that the only question presented by this appeal is whether the decree in the foreclosure proceedings constitutes a bar to the present action. If it does, the judgment must be affirmed; if not, it must be reversed.

It is contended by plaintiffs that this judgment is not binding on them for the reason that no cross-petition was filed against them; that no adverse issue was raised against them by their codefendant oil company and no affirmative relief asked against them; that a judgment or decree in favor of plaintiff against several defendants settles nothing as between codefendants unless their conflicting claims are actually brought before the court by cross-pleadings and their rights determined by the court on such pleadings.

This is, no doubt, the general rule, but the rule is subject to exceptions as well established and defined as the rule itself. In 21 C. J., at page 669, the following rule is announced:

"Adverse interests between codefendants may be passed upon, and a decree made between them grounded upon the pleadings and proof between plaintiff and defendants, and founded upon and connected with the subject-matter in litigation between plaintiff and one or more of defendants. On the issues which may thus be determined between defendants, they are bound under the doctrine of res judicata the same as though such issues had been raised by direct pleadings between them. But without a cross-bill, or its equivalent, such relief cannot be granted as to matters not put in issue by the pleadings between plaintiff and defendants; nor will relief between codefendants be granted where all the interested parties are not before the court, nor against defendants not charged in the bill and against whom no relief is asked. Another statement of the rule is that if plaintiff cannot get at his right without trying and deciding a case between codefendants, the court will try and decide that case, and codefendants will be bound; but that if the relief given to plaintiff does not require or involve a decision of any case between codefendants, they will not be bound by any proceedings which may be necessary only to the decree plaintiff obtains."

In the case of Epperson v. Epperson (Va.) 62 S. E. 344, the court, in discussing this question at page 346, says:

"There is one other assignment of error which demands attention; that is to say: That it was not competent to decree between codefendants without cross-pleadings.

"In point of fact, the principal question involved in the pleadings and decided by the court was the construction of the contract of May 15th, and the necessary result of the decision of that issue between plaintiff and defendants was to affect the rights of defendants among themselves.

"The rule of practice invoked is not inflexible, but is a rule of convenience, founded largely on the principle that the tendency of such decree is to delay the plaintiff in order that defendants may litigate rights foreign to his claim and not material to the matter in issue; and for the additional reason that one defendant has no opportunity by answer properly to state his own case against a codefendant. Glenn v. Clark, 21 Grat. 39.

"But the general rule is not applicable where the rights and equities between codefendants necessarily arise upon the pleadings and evidence between plaintiffs and defendants. Templeton v. Fauntleroy, 3 Rand. 442; Blair v. Thompson, 11 Grat. 441.

"The rule is thus stated by Vice Chancellor Wigram, in Cottingham v. Earl of Shrewsbury, 3 Hare, 627; 'If the plaintiff cannot get at his right without trying and deciding a case between codefendants, the court will try and decide that case, and the codefendants will be bound.'"

In the case of Winkleman v. White (Ala.) 42 So. 411 in paragraph 10 of the syllabus, the following rule is announced:

"In a foreclosure suit by the holder of two of several notes secured by a mortgage, af-

firmative relief may be decreed to defendants holding the other notes, without cross-bill."

In discussing the case at page 414, the court says:

"The rule as expressed by Lord Eldon is that 'where a case is made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity is entitled to make a decree between the defendants, and is bound to do so." 2 Dan. Ch. Pr. 1370, note 6. Lord Redesdale says the same in Chamley v. Lord Dunsany, 2 Sch. & Lef. 718. Vanderveer v. Holcomb, 17 N. J. Eq. 87; Elliot v. Poll, 1 Paige (N. Y.) 263; Shannon v. Marselis, 1 N. J. Eq. 424.

"The complainant was the holder of two of a number of notes secured by the same mortgage, and it was necessary, in order to give him complete relief, to determine the entire debt, and the order of priority. This relief could be given as to all the parties on the bill and answers; for the original bill brought the entire subject under control of the court. The other holders of notes appeared and insisted in the adjustment of their debts and priorities, and they took no appeal and are not now complaining. As between each of these holders of notes and complainant in the original suit, the question of the amount and priority of the debts against the property was directly involved, and the mortgagor was liable for the aggregate. 'In such a case,' says Lord Redesdale. 'The court is bound to decree between the defendants, and refusing to do so, it would be a good cause of appeal by either defendant.'

"Chambley v. Lord Dunsany, supra. The original bill brought under the control of the court the entire subject-matter of the ascertainment of all the claims against the mortgaged property and of a sale for their payment. There was thus no need for any cross-bill. Rule 108 of Chancery Practice; Gilman Sons & Co. v. N. O. & S. R. Co., supra; Soles v. Sheppard, 99 Ill. 616."

See, also, the following cases: William W. Cochran v. Chesapeake & Ohio Canal Co., 94 U. S. 741, 24 L. Ed. 190; Waldo v. Walso (Mich.) 17 N. W. 709; Hapwood v. Ellis (Neb.) 7 N. W. 845; Nave v. Adams (Mo.) 17 S. W. 958; Devin v. City of Ottumwa (Iowa) 5 N. W. 522.

In the case last above cited, the syllabus is as follows:

"Former adjudication as to the title to certain lands in Ottumwa, in which action the parties hereto were defendants, and title as to the plaintiff was quieted in present plaintiff. Held a binding adjudication as to parties in present action."

The court, after holding the judgment binding as between codefendants, even though no cross-pleadings were filed, at page 556 concludes as follows:

"We have not herein referred to the numerous authorities cited by counsel for the respective parties upon the question. A careful examination of them leads us to the conclusion that they could not be reviewed in the limits we felt bound to confine ourselves to in this opinion. There are some general rules upon the subject of res adjudicata which are recognized in all the cases; but the facts in each case are so variant that after all each one must be determined upon its own merits, keeping in view only the one invariable and fundamental rule, that when a question between parties has once been fairly presented to a court of competent jurisdiction and determined upon its merits, that determination should forever settle the controversy."

We will not attempt to enter into a discussion or analysis of the numerous cases cited by counsel touching the proposition here involved, but will content ourselves by merely adopting the language of the Iowa court above quoted.

The plaintiffs rely on the following cases from this state: Keagy v. Wellington Nat. Bank, 12 Okla. 33, 69 Pac. 811; Dewatteville v. Sims, 44 Okla. 708, 146 Pac. 224; Henthorn v. Tidd, 63 Okla. 280, 164 Pac. 783, and other cases. We do not consider these cases controlling under the facts in the instant case. In neither of these cases was it necessary to pass upon the rights of codefendants in order to ascertain and adjust the rights and equities between the plaintiff and any one of the defendants.

In the instant case, it was essential that the amount advanced by the oil company for the operation of the lease be ascertained and determined before a decree foreclosing the mortgage executed by the Gillams could have been rendered. No proper decree could have been rendered without so doing. The oil company and the Gillams, under issues raised by the pleadings, were, in fact, adversary parties.

This being true, all issues raised by the pleadings between plaintiff and defendants, or either of them, could be settled and adjudicated without filing cross-pleadings; and the judgment rendered thereon was binding upon all parties to the action. The plaintiffs in the instant suit were equally bound thereby with the defendant oil company.

Plaintiffs' sole argument is based on the theory that no issue was raised in the former suit between them and the oil company, and they call special attention to the fact

that the judgment of October 27, 1924, recites that no issue had been raised between them and the oil company. At the time this judgment was rendered, these plaintiffs voluntarily withdrew from the case and in open court announced that they did not wish to further defend. The cause, at said time, was continued as between the bank and this defendant for the express purpose of determining the amount, if any, due it under the assignment executed by plaintiffs. This it was necessary to do under the pleadings filed in order to determine the rights of the bank under the mortgage executed by plaintiffs. This the plaintiffs knew or were bound to know at the time they withdrew from the case. This recital, taken together with other recitals, simply means that these plaintiffs did not wish to take issue with the oil company, but were content to leave this matter to be litigated by and between the bank and the oil company. Having done so, they are bound by the decree, and the trial court properly held the same a bar to this action.

Judgment should be affirmed.

BENNETT, JEFFREY, HALL, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.