James O. WOOD, III, Mark David Wood, Melinda Wood Hankins, James Randolph Hubbard and Paul Huntleigh Hubbard, Appellants,

v.

Robert Butler SYMPSON, Jr., Cuma Oil Co., Inc., Phillips Petroleum Company, W.J. Coffman, L.E. Lookabaugh, Amoco Production Company, Jack B. Smith, and Mack Oil Company, Appellees.

No. 69360.

Supreme Court of Oklahoma.

June 30, 1992.

---

Richard L. Allen, Chickasha, for appellants,

Tom Frailey, Chickasha, for appellee, Robert Butler Sympson, Jr.

William G. Paul, John L. Williford, Galen E. Ward, Jim Hamilton, Oklahoma City, for appellee, Phillips Petroleum Co.

LAVENDER, Justice.

Appellants sought to quiet title to an undivided ¼ mineral interest (40 acres) in

the NW/4 of Section 9, Township 3 North, Range 5 West, Indian Meridian, Grady County, Oklahoma. They sued numerous defendants, including appellee, Robert Butler Sympson, Jr. (Sympson).[1] Sympson sought summary judgment claiming ownership of an undivided 1/16 mineral interest (10 acres) in the NW/4 by a quit claim deed from Alma Lee Ball Sympson (Alma), who he asserted acquired her interest by the after-acquired title doctrine. Summary judgment was granted to Sympson.[2] The Court of Appeals reversed, relying on the res judicata effect of a 1932 mortgage foreclosure judgment. We now vacate the decision of the Court of Appeals and affirm the trial court.

Appellants present four propositions in support of their appeal: 1) the res judicata argument, 2) the statute of limitations found at 12 O.S.1981, § 93(1) or (4) and/or certain provisions of the Oklahoma Simplification of Land Titles Act, 16 O.S.1981, § 61 et seq. and Marketable Record Title Act, 16 O.S.1981, § 71 et seq., bar Sympson's claim,[3] 3) a claim of adverse possession, and 4) the trial court erred in not applying the after-acquired title doctrine to certain deeds made by Sympson's predecessor in interest. In our view, each argument is unavailing.[4]

## FACTS

The trial court was presented with an abstract of title covering the NW/4, the original court record in *Mary Leota Heill v. R.L. Bowyer, et al.*, Case no. 13080, District Court of Grady County, Oklahoma (the earlier foreclosure action) and certain other materials in support of the parties' positions. Appellants did not dispute Sympson's factual assertions, but argued the facts showed Sympson was barred from claiming an interest in the minerals by virtue of the legal defenses set out above.

The pertinent facts shown by the record follow.[5] An allotment patent was issued to Mary I. Choate in February 1907. Choate sold the property to R.L. Bowyer and Zelma Ball in April 1923 and in the same month they granted a mortgage to Fidelity Land Credit Company, which was later assigned to Mary Leota Heill. In July 1923 Bowyer and Zelma Ball conveyed a 1/64 mineral interest to L.L. Laws. In March 1924 Bowyer and Zelma Ball conveyed an undi-

---

1. Certain of the other named defendants below were asserted in appellants' petition filed in the trial court to have an interest in the minerals by virtue of oil and gas leases from appellants or assignments thereof or were asserted to claim some interest by virtue of an oil and gas lease from Sympson or assignments thereof. Another defendant was asserted to be the operator of a producing oil and gas well on the property. Finally, one defendant appears to have been named based on an assertion it may claim some interest in the property similar to that claimed by Sympson, i.e. based on the doctrine of after-acquired title. Of these other defendants, only appellee Phillips Petroleum Company has filed a brief on appeal. Phillips apparently derives its interest by virtue of an assignment of an oil and gas lease from Sympson.

2. Summary judgment is appropriate when there is no substantial controversy as to any material fact and it appears one party is entitled to judgment as a matter of law. *Sellers v. Oklahoma Publishing Company*, 687 P.2d 116, 120 (Okl. 1984).

3. The Title Examination Standards adopted and revised by the House of Delegates of the Okla-

homa Bar Association pertaining to these two Acts may be found at 16 O.S.1991, Ch. 1, App., § 18.1 et seq. [Simplification of Land Titles Act] and § 19.1 et seq. [Marketable Record Title Act]. Although we have recognized these standards are not binding on this Court we have deemed them to be persuasive. *Knowles v. Freeman*, 649 P.2d 532, 535 (Okl.1982).

4. The Court of Appeals did not decide all the issues apparently determining a reversal on the res judicata basis made it unnecessary. In that we hold the trial court was correct in rejecting the res judicata argument we must reach the other claims of error to determine if summary judgment was properly granted to Sympson. *See Johnson v. Wade*, 642 P.2d 255, 259 (Okl. 1982).

5. We note some of the conveyances to be set out may have been joined in by spouses of the grantors specified. For our purposes such fact is unimportant and we merely point out the fact.

vided ¼ mineral interest to Hoy Garber Oil Company. In March 1926 Hoy Garber Oil Company conveyed a ¼ mineral interest to Alma, Sympson's predecessor in interest. In the same month Alma conveyed her ¼ interest to K.S. Woolery, who in turn conveyed it to Magnolia Petroleum Company. None of the conveyances of this ¼ mineral interest excepted the mortgage from the warranties contained therein.

In April 1926 C.E. Costello and C.E. McCaughey purchased an undivided ¹⁄₆₄ mineral interest from L.L. Laws. Later that month Costello and McCaughey conveyed an undivided ¹⁄₁₆ mineral interest to H.S. Clarke. In September 1928 Costello conveyed an undivided ¹⁄₁₆ mineral interest to John Warren Royalties Corporation. In November 1929 Costello conveyed an undivided ¹⁄₁₆ mineral interest to Alma.[6] It contained a warranty clause, *but at the time of said deed Costello owned no right, title or interest in the subject property, having previously conveyed any interest he had in it.*

In 1931 Heill filed a petition in Grady County (Case No. 13080) to foreclose the outstanding mortgage granted in April 1923. Alma was named a defendant, along with other individuals and entities, she was served with process and failed to appear in the action. A judgment of foreclosure was entered in March 1932 determining, among other things, Heill's mortgage interest was superior to that of any defendant, Alma and certain other defendants were found to be in default, the mortgage should be foreclosed, the property should be sold at sheriff's sale and forever barring Alma and certain other defendants from claiming any interest or estate adverse to the title conveyed at the sheriff's sale.[7]

The judgment also granted a money judgment to Clarke, a defendant in the suit, on his cross-petition against Costello and McCaughey for breach of warranty because their deed to him was an over-conveyance and it did not except Heill's prior mortgage. Another defendant, Ohio Fuel Supply Company was granted a money judgment on its cross-petition against McCaughey for breach of warranty on the basis a conveyance made by him to its predecessor in interest of a ¹⁄₁₆ mineral interest did not except Heill's prior mortgage.

In October 1932 the entire 160 acres, surface and minerals, were sold to Costello at sheriff's sale. The sheriff's sale was confirmed in November 1932. The part of the March 1932 judgment awarding a money judgment to Clarke was vacated in January 1933, apparently on the basis there had been some settlement of the matter between the parties (i.e. Clarke, Costello and McCaughey) prior to the judgment to the effect Clarke would accept a ¹⁄₁₆ mineral interest from Costello if Costello purchased the property at the sheriff's sale. In April 1933 Clarke's cross-petition was dismissed with prejudice on motion of Clarke on the basis an unexplained settlement had been reached by the parties.

In April 1934 Costello conveyed an undivided ½ interest in the property to Ethel M. Ball. In November 1935 Costello conveyed an undivided ½ interest to Roy Hodge. Later in November 1935 Hodge conveyed an undivided ½ interest to Thelma Wood. In November 1936 Wood conveyed a ¹⁄₁₆ mineral interest to McCaughey, who in turn, in February 1937, conveyed a ¹⁄₁₆ mineral interest to Ohio Fuel Supply Company. In October 1942 Wood conveyed away her interest in the surface. In August 1979 Wood conveyed away a ¼ mineral interest in bundles of a ¹⁄₂₀ mineral interest each to five grandchildren, four of whom are appel-

---

**6.** This deed was filed of record in March 1930.

**7.** The judgment also alternatively ordered the property sold subject to certain other defendants' interests in either the surface or minerals (all of such interests were determined to be inferior to Heill's mortgage), but if such "subject to" sales were insufficient to satisfy Heill's mortgage the property was ordered sold free, clear and discharged of any such interests. The property was eventually sold at sheriff's sale free and clear of all such interests.

lants. The fifth appellant, Melinda Wood Hankins, is apparently the daughter of James O. Wood, Jr., one of the five grandchildren conveyed a 1/20 mineral interest in August 1979. James O. Wood, Jr. apparently conveyed his interest to Hankins upon her reaching majority. Thus, appellants derive their interests from Costello, through Hodge and then Thelma Wood or James O. Wood, Jr. in the case of Hankins.

The record also shows Thelma Wood entered into oil and gas leases on the property in 1944 and 1974. Her affidavit also says when she purchased her interest in the property in 1935 Alma and all other individuals were of the opinion they had no interest in it. The record *does not* conclusively show for what period of time minerals were produced from the property, although statements were made by counsel at the summary judgment hearing that a producing well was drilled on the property two or three years prior to the instant action being filed. Finally, Alma quitclaimed her interest in the property, if any, to Sympson in 1982.

## PART I. THE AFTER–ACQUIRED TITLE DOCTRINE IS SUPERIOR TO THE DEFENSE OF RES JUDICATA ON THE FACTS DISCLOSED BY THIS RECORD

The doctrine of after-acquired title or estoppel by deed, although of common law origin, is part of our statutory law found at 16 O.S.1991, § 17. *Lucas v. Cowan*, 357 P.2d 976, 978 (Okl.1960). Section 17 provides:

> All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be.

The doctrine precludes one party to a deed and his privies from asserting against the other party and his privies any right or title in derogation of the deed or from denying the truth of material facts asserted in the deed. *Lucas, supra* at 978. Where a grantor conveys by warranty deed an interest he does not then own, but thereafter acquires, the reacquired interest inures to the benefit of the grantee. *Campbell v. Butler*, 770 P.2d 7, 11 (Okl.1988). The vesting of title in the grantee, upon his grantor's reentry into the chain of title, passes by operation of law without any intervention of any court. *Lucas, supra* at 979; *United Oklahoma Bank v. Moss*, 793 P.2d 1359, 1362 (Okl.1990). The initial conveyance from a grantor who does not then own an interest in the property vests in the grantee equitable title to the interest purportedly conveyed in the warranty deed, so that when the grantor later acquires legal title it will instantly and immediately pass to the grantee. *Id.* The purpose of the doctrine is to assure a grantor's or encumbrancer's warranty is effectuated. *Id.*

In the instant case, Costello in 1929 conveyed a 1/16 mineral interest to Alma, Sympson's predecessor, *he did not then own.* Costello thereafter purchased the property at sheriff's sale after the outstanding mortgage was foreclosed. The instant facts appear to be a perfect example for application of the after-acquired title doctrine.

In speaking of the doctrine we have said:

> This court, under its former decisions, is committed to the philosophy of the law that a grantor is estopped from asserting an after acquired title as against his grantee to whom he has given a warranty of title, no matter what conduit or circuity of conveyancing the title may pass through in returning to the grantor.

*Hanlon v. McLain*, 206 Okl. 227, 242 P.2d 732, 737 (1952).

We applied the doctrine in *Hanlon* even though a grantee of a mineral interest and his grantor were parties to a foreclosure action and the grantee had filed a general disclaimer therein. We held the filing of the disclaimer did not bar the grantee from relying on the after-acquired title doctrine where a mortgagee purchased at sheriff's

sale in the foreclosure proceedings and thereafter resold the property to grantee's grantor. In so holding we said:

Assume that, following the filing of the disclaimer, the grantors had redeemed by payment of [mortgagee's] claim, and thereupon the foreclosure action had been dismissed. Could it be contended that the grantors took back the land, free of the grantees' mineral deed, and that the filing of the disclaimer deprived the grantees of their rights under the deed? We think not. In such a case it is clear that the grantors would have done nothing more than to clear the title of the mortgage lien,—an obligation they had assumed under their covenant and warranty in the mineral deed.

The disclaimer was not a conveyance to the defendant grantor or to any other person. Grantor was asserting no claim against the grantee in the foreclosure action and the disclaimer was not a response to any pleading filed by the grantor. In fact the grantor did not appear, but permitted a judgment by default. The whole purpose and office of the disclaimer in the foreclosure action was to serve as a response to plaintiff bank's claim of a superior title and permit grantees to escape liability for costs.

*Id.* at 738, 242 P.2d 732.

In *Triangle Royalty Corp. v. Graves,* 206 Okl. 409, 242 P.2d 740 (1952), a case brought by plaintiffs to quiet title to a certain mineral interest, we also applied the doctrine after a previous foreclosure judgment. The plaintiffs or their predecessors in *Graves* were defendants in the foreclosure action and had actual or constructive notice thereof. After foreclosure judgment was entered, but prior to confirmation of the sheriff's sale, the purchaser (the mortgage holder) at the sheriff's sale executed a general warranty deed to plaintiffs' predecessor's grantor. *Id.* 242 P.2d at 741. We said therein:

Here the original owner and [ ] grantor actually acquired the title from the holder of the mortgage, prior to the confir-

mation of the sheriff's sale and the issuance of the sheriff's deed. Defendants admit that such a situation is an excellent example of the doctrine of after acquired title strengthening the title of the grantee.

*Id.* at 741.

We also applied the doctrine in *Lucas, supra* to a mineral interest where the predecessor of the doctrine's proponent was a party to a previous foreclosure action and the property was later reacquired by the predecessor's grantor after being sold at sheriff's sale. 357 P.2d at 978–979. There is further *Born v. Bentley,* 207 Okl. 21, 246 P.2d 738 (1952), where the proponent's predecessor was a party to a previous foreclosure action and he answered and cross-petitioned against his grantors as to a third mortgage held by him. We upheld the doctrine's applicability where one of the grantors purchased the property from the purchaser at the sheriff's sale, even when the facts showed the proponent's predecessor did not mention in either his answer or cross-petition filed in the previous foreclosure the fact he then held a ½ interest in the mineral rights by a deed from the grantors. All of these cases show our adherence to application of the doctrine when an offending grantor reacquires title.

Appellants argue, however, res judicata should apply to trump the doctrine because Alma could have litigated Costello's breach of warranty in the previous mortgage foreclosure action and the breach of warranty question was put in issue by both Clarke (on the basis of over conveyance and failure to except Heill's outstanding mortgage) and Ohio Fuel Supply Company (failure to except the mortgage) in regard to their separate deeds. Appellants also argue res judicata should be applied because the March 1932 judgment expressly barred the defendants from claiming any right, title or interest, adverse to the title to be conveyed at the sheriff's sale. The arguments are unpersuasive.

■ The general rule as to coplaintiffs or codefendants (the latter being the posi-

tions of Costello and Alma in the foreclosure action) is a judgment settles nothing between them unless their conflicting or hostile claims were brought in issue, as by cross-petition or separate or adverse answer, or otherwise, and were actually litigated and adjudicated. *De Watteville v. Sims*, 44 Okl. 708, 146 P. 224, 226 (1914).[8] *Sims* involved a situation where we refused to give res judicata effect to a judgment foreclosing a materialman's lien against a number of defendants, including a holder of a mortgage lien, who did not set up the mortgage in the foreclosure action, but later sought to foreclose his mortgage as against his codefendants in the first foreclosure, who acquired no interest in the property under or by reason of the first foreclosure and were not in privity with the plaintiff in the first foreclosure action.[9]

■ In the first instance, the assertion the cross-claims of Clarke and Ohio Fuel Supply Company somehow brought into issue a warranty issue between Alma and Costello is wrong because those cross-claims *did not* involve Alma, but were based on *separate* warranty deeds from Costello and McCaughey in the case of Clarke and from McCaughey in the case of Ohio Fuel Supply Company. We can discern no rationale, given the general rule espoused in *Sims*, to hold merely because some codefendants *based on separate deeds* sought to enforce the warranties

thereof and were granted monetary judgments on their cross-claims, all codefendants that may also have had breach of warranty claims as to the warranties in their *separate* deeds were also required to litigate such claims.[10]

The fact is there is absolutely no indication in the original record of the foreclosure action any issue between Costello and Alma as to his deed to her of a 1/16 mineral interest was litigated therein. Costello brought no cross-claim against Alma and Alma brought none against him. Quite simply, the cross-claims of Clarke and Ohio Fuel Supply Company are irrelevant to the res judicata issue raised here and the determination of said cross-claims in no way show the trial court *meant to or did* determine all warranty issues that may then have been viable between the various codefendants, contrary to appellants' assertions.[11]

■ Appellants, however, also essentially argue because it was Costello, appellants' predecessor, who purchased the property at the sheriff's sale, res judicata should be applied over any argument such purchase immediately revested a 1/16 interest in Alma by virtue of the after-acquired title doctrine because the foreclosure judgment rendered seven months prior to the sheriff's sale held in October 1932 had determined the defendants would be precluded from claiming any interest in the property adverse to the title to be conveyed at the sheriff's sale. We disagree.

---

8. An exception to the general rule is where the rights as between a plaintiff and a defendant cannot be adjudicated without determining rights between codefendants. *Gillam v. Coline Oil Co.*, 136 Okl. 257, 277 P. 639, 641–642 (1929). We do not believe the exception is applicable here.

9. Appellants do not argue they could in any way be considered in privity with the plaintiff, Heill, in the foreclosure action.

10. It should be noted Clarke's monetary judgment against Costello and McCaughey was eventually vacated on the basis there had been an agreement between the three Clarke would accept a deed for a 1/16 mineral interest should Costello purchase the property at the sheriff's sale when the property was sold. Further, as noted earlier in the text Clarke's cross-petition was finally dismissed with prejudice on Clarke's

motion on the basis of some unexplained settlement. There is absolutely no indication in this record Alma ever settled anything with Costello in regard to his deed to her, which purported to convey her a mineral interest he did not then own.

11. Our view is bolstered by *Marx v. Beard*, 302 P.2d 132, 133–134 (Okl.1956), a case concerning the applicability of certain statutes of limitation to the doctrine of after-acquired title, where we recognized a proponent of the doctrine was under no duty to bring a cause of action for damages for breach of warranty, but was allowed to await reacquisition of title in his grantor of sufficient interest in the land and, in effect, obtain specific performance of their warranty on the theory of after-acquired title.

We have held the judgment in a mortgage foreclosure action is the order determining the amount due and ordering the sale of the property to satisfy the mortgage lien. *Federal Deposit Insurance Corporation v. Tidwell*, 820 P.2d 1338, 1341 (Okl.1991). Accordingly, in order to preserve review of errors as to such a judgment it is necessary to file a timely appeal from that judgment to this Court. *Id.* The judgment in the prior foreclosure action was issued in March 1932. At such time, what could have been appealed by Alma in regard to her codefendant Costello or his *future* purchase of the property at sheriff's sale? Nothing, for the reason no question had been put in issue between these codefendants at said point in time and obviously Costello had not yet purchased the property at the sheriff's sale so the after-acquired title doctrine would not then have been applicable. She would further have had nothing to appeal in regard to the judgment's determination her interest was inferior to Heill's mortgage interest because Costello's deed to her was dated in November 1929 and Heill's mortgage April 1923. Her interest *was* inferior. Although it is true the foreclosure judgment did have the effect of barring and precluding Alma from claiming any right, title or interest in the property adverse to the title to be conveyed at the sheriff's sale we do not think this fact requires application of the doctrine of res judicata in regard to the interest acquired by Costello, even though as to any other person, except her grantor and the grantor's privies, she would have been so precluded.

After the sheriff's sale it was incumbent on the trial court to confirm the sale. The trial court did so without any complaint from Alma, who as noted had not appeared in the proceeding after having been served. Obviously, Alma would have had no interest in arguing the sheriff's sale *should not* be confirmed. Her claim, and Sympson's present claim, *depended upon* Costello reacquiring the property. In effect, his purchase of the property at the sheriff's sale was nothing more than fulfillment of his

warranty to Alma in the November 1929 mineral deed that he owned a ⅟₁₆ mineral interest in the property. Although in *Hanlon, supra,* an over-conveyance was not involved, but a failure of a grantor to fulfill his obligation under his warranty to pay a mortgage, we noted in upholding the after-acquired title doctrine, such grantor could not evade his obligation to his grantee under his warranty in a mineral deed by permitting a mortgage to be foreclosed and then repurchasing same from the purchaser at the sheriff's sale. 242 P.2d at 737. Likewise, a grantor who over-conveys a mineral interest cannot evade his warranty by purchasing the property at a foreclosure sale. Alma's interest, as noted, depended on Costello regaining title to the property and only through his purchase could Alma claim any interest through the doctrine of after-acquired title. In our view, in such a situation it would be inappropriate to give res judicata effect to the foreclosure judgment because *at the moment* Costello purchased the property title to a ⅟₁₆ mineral interest instantly and immediately vested in Alma by virtue of the after-acquired title doctrine and Costello and his privies (appellants) are estopped by the previous mineral deed to Alma to contradict the warranties contained in that deed. We do not believe the fact the offending grantor was the one who purchased the property at sheriff's sale, rather than some intermediate party doing so and then conveying to the offending grantor thereafter, is a sufficient basis to deviate from our longstanding adherence to the doctrine of after-acquired title. Accordingly, the res judicata argument of appellants was properly rejected by the trial court.[12]

## PART II. NO STATUTE OF LIMITATION OR THE TITLE ACTS RAISED BY APPELLANTS BARRED SYMPSON'S CLAIM

### A. STATUTE OF LIMITATIONS

Appellants argue the limitation periods found at 12 O.S.1981, § 93(1) or (4), bar Sympson's claim. We disagree.

**12.** We also note appellants' reliance on *Singer–Fleischaker Royalty Co. v. Whisenhunt*, 402 P.2d 886 (Okl.1964), for the proposition each time a

claim of applicability of the after-acquired title doctrine is made we will engage in a searching inquiry into the equities of the situation, is mis-

■ In *Triangle Royalty Corp. v. Graves, supra* 242 P.2d at 742, we determined the five (5) year limitation period for the recovery of real property found at § 93(1) did not apply to bar a claim based on the after-acquired title doctrine. In *Lucas v. Cowan, supra* at 979 we reiterated the inapplicability of § 93(1) by emphasizing an action based on the after-acquired title doctrine was not one for the recovery of real property covered by that subsection, but was in the nature of a proceeding to quiet title to an interest therein.

*Lucas* also held the fifteen (15) year limitation period of § 93(4) did not apply. In rejecting it we said:

> Since the title in the cause at bar revested in [grantee] by law and by right when [grantor] reacquired the quarter section subsequent to the foreclosure, neither [grantee] nor his heirs were under any duty to 'perfect' their right by an action to quiet title. The prior deed continued to serve as a valid muniment of [grantee's] outstanding interest in the minerals.

*Lucas, supra* at 979.

■ The present case is controlled by these prior rulings. Just as the grantee and his heirs in *Lucas* were not required to bring any proceeding to 'perfect' their title, neither Alma or Sympson were required to do so in regard to the ¹⁄₁₆ mineral interest

involved here. The interest revested in Alma by operation of law and by right the moment Costello reacquired the property. Accordingly, no limitation period raised by appellants was set in motion which would bar Sympson's present claim to the mineral interest. *Id.*[13]

## B. OKLAHOMA SIMPLIFICATION OF LAND TITLES ACT

■ Appellants further argue the Oklahoma Simplification of Land Titles Act, 16 O.S.1981, § 61 et seq., should be applied to bar Sympson's claim. We disagree. The pertinent provision to the situation here is § 62(d) which provides in relevant part:

> Any purchaser for value acquiring an interest in real estate from one who claims such interest, immediately or remotely, by or through any of the following muniments: (1) a sheriff's or marshall's deed executed pursuant to an order of a court having jurisdiction over the land affected confirming a judicial sale or directing the issuance of such deed, ... which muniment, if a conveyance has been of record in the county wherein the land is situated for a period of ten (10) years prior to such purchase ... shall acquire a valid and marketable title to such interest as against the claims of the following: (A) any person or the heirs, devisees, personal representatives, successors or assigns of such person who was named as a defendant in the judgment preceding the sheriff's or

placed. As we noted in *Campbell v. Butler,* 770 P.2d 7, 10 (Okl.1988), "*Singer–Fleischaker Royalty Co.* [ ] does not sanction a broad inquiry into weighing the equities before recognizing that title passed by operation of law upon reacquisition of the property by the grantor. In [that case], the reacquiring grantor was not under an obligation to satisfy the mortgage at the time the property was foreclosed and thus was not responsible for the loss of the mineral estate." In our case the doctrine is applicable as to Costello because he conveyed a mineral interest to Alma he did not own and thereafter reacquired the property. We find nothing inequitable in applying the doctrine against his privies here (appellants) for the reason our doing so is accomplishing nothing more than the doctrine's purpose, to wit: ensuring the warranty given by Costello in his 1929 deed to Alma that he owned a ¹⁄₁₆ mineral interest in the property is being effectuated. No over-conveyance issue was involved in

*Singer–Fleischaker Royalty Co.* and the relevant portion of that case setting forth the rationale for non-application of the doctrine simply has no application here: "We therefore conclude and hold that '[w]here A mortgages his land and thereafter conveys the mortgaged premises to B, and B becomes obligated to satisfy the mortgage indebtedness and foreclosure proceedings are had, and the property sold, B may not invoke the doctrine of estoppel by deed against A if A reacquires the property.'" *Campbell, supra,* at 11, quoting *Singer–Fleischaker Royalty Co., supra* at 892.

13. In *Lucas* a period of twenty-four (24) years had elapsed between the grantor's reacquisition of the property and raising of an issue based on the after-acquired title doctrine in a judicial forum.

marshall's deed referred to in subparagraph (1) above and whose rights or claims were not preserved by the terms of such judgment *and who claims an interest by reason of any defect, jurisdictional or otherwise, in the proceedings resulting in such judgment....* (emphasis added)

As the emphasized part of the provision makes clear, even assuming all the other requirements are met, the subsection applies only when the person who claims an interest is so claiming by reason of a defect in the proceedings resulting in the judgment leading up to the sheriff's deed. Sympson does not claim any defect in the prior foreclosure action, but claims his interest was acquired by his predecessor Alma by operation of law the instant Costello reacquired the property after the March 1932 foreclosure judgment was entered. We cannot simply ignore this qualification in the statute so as to apply it to situations like that here where the claim of interest is made independently of any defect in the proceedings resulting in the judgment at issue. Simply, § 62(d) is not applicable to bar Sympson's claim.[14]

## C. OKLAHOMA MARKETABLE RECORD TITLE ACT

 Appellants next claim the Oklahoma Marketable Record Title Act, 16 O.S. 1981, § 71 et seq. may be utilized to bar Sympson's claim. The argument is without merit. Section 76 of said Act expressly provides, "[t]his act shall not be applied ... to bar or extinguish any mineral or royalty interest which has been severed from the

fee simple title to the land...." The interest involved here, is a severed mineral interest. The provisions of this latter Act do not, therefore, apply.

## PART III. APPELLANTS FAILED TO RAISE ANY GENUINE DISPUTE AS TO ANY MATERIAL FACT PRECLUDING SUMMARY JUDGMENT TO SYMPSON ON THE BASIS OF ADVERSE POSSESSION

Appellants assert the fact they or their predecessor, Thelma Wood, granted oil and gas leases as to the involved mineral interest at least since the 1940s is sufficient to show adverse possession of the mineral interest.[15] Appellants are mistaken.

 We have held in order for a cotenant to show adverse possession in regard to a severed mineral interest (the situation involved here) actual possession of the minerals by opening and operating mines for the statutory period must be shown. *Pan Mutual Royalties v. Williams,* 365 P.2d 138, 140 (Okl.1961). There has been no showing of any taking of actual possession of the minerals for the statutory period and appellants do not argue otherwise. Thus, appellants' claim in regard to adverse possession provided no basis to deny Sympson summary judgment.

## PART IV. THE TRIAL COURT DID NOT ERR BY FAILING TO APPLY THE AFTER–ACQUIRED TITLE DOCTRINE TO PRIOR DEEDS OF ALMA

 Appellants assert that because the *separate* ¼ mineral interest Alma conveyed

---

**14.** The case of *Panhandle Royalty Co. v. Farni,* 747 P.2d 932 (Okl.1987), partially relied on by the Court of Appeals to reverse the trial court's ruling in favor of Sympson, provides no support for such a reversal. In the first instance, the Court of Appeals incorrectly concluded something in regard to the Simplification of Land Titles Act was decided in *Farni.* As the opinion clearly points out, it was unnecessary for us to decide anything in regard to the Simplification of Land Titles Act because of our answer to the first two of three issues raised on appeal. *Id.* at 933. Accordingly, nothing was determined in regard to that Act. Secondly, the situation in *Farni* involved a direct attack on the validity of a prior judgment entered in a quiet title action on the basis the judgment was void or voidable

because of a lack of personal jurisdiction over certain parties and allegations of fraud, respectively. *Id.* at 933–934 Here, as noted in the text, there is no attack on the validity of the prior foreclosure judgment and no claimed defect in the proceedings leading up to that judgment. *Farni* simply has no application here.

**15.** We are also cognizant of the affidavit of Thelma Wood which states, among other things, Alma and all other individuals were of the opinion they had no interest in the property after she purchased a ½ interest in the quarter section in 1935. The affidavit is wholly insufficient to sustain a claim of adverse possession to a severed mineral interest.

to K.S. Woolery, who in turn conveyed to Magnolia Petroleum Company, did not except Heill's mortgage, any interest she acquired by Costello's purchase of the property at the sheriff's sale (i.e. $\frac{1}{16}$ mineral interest) should, via the after-acquired title doctrine, go to Magnolia Petroleum Company, who is not a party in this case.[16] We need not decide whether the after-acquired title doctrine would be applicable in any respect to this $\frac{1}{4}$ interest for the reason appellants in this case must recover on the strength of their own title and not on any weakness of Sympson's title. *Dearing v. State ex rel. Com'rs of Land Off.*, 642 P.2d 226, 229 (Okl.1982). Further, it is clear that here Sympson has made out a claim to some interest in the property by virtue of the after-acquired title doctrine. While Sympson was required to make out a claim to some interest superior to appellants he need not have a title superior to persons not parties to the suit. *Id.* at 230. Thus, the argument Magnolia Petroleum Company may potentially have a superior interest to that of Sympson provided no basis for denying Sympson's motion for summary judgment.

For the reasons set forth in this opinion, the decision of the Court of Appeals is VACATED and the judgment of the trial court is AFFIRMED.

OPALA, C.J., and SIMMS, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, V.C.J., and ALMA WILSON, J., dissent.

---

**16.** In the prior foreclosure judgment Magnolia Petroleum Company was determined to be the owner of the $\frac{1}{4}$ mineral interest and that said interest was inferior to Heill's mortgage. The property was sold at the sheriff's sale free of the interest. Alma obtained the $\frac{1}{4}$ mineral interest from Hoy Garber Oil Company in March 1926. Alma's deed to Woolery and Woolery's to Magnolia were also in 1926. Hoy Garber Oil Company had obtained the interest in 1924 from the owners of the NW/4.