2001 OK 34

**MACK OIL COMPANY, Plaintiff,**

v.

**Charles P. GARVIN, Harold T. Garvin; Mary Helen Garvin Dunaway; Bancfirst, Trustee of the Mary Helen Garvin Dunaway Trust; Houston Garvin; Thomas R. Garvin; Sara Garvin Meaders; Michael A. Smith, Trustee of the Susan Garvin Long, Carol K. Leverette and Kay C. Garvin Trust II; Dorothy Jane Gross; Jack D. Gant & Evelyn Gant, Trustees of the Gant Family Trust; Helen Gant Ridley, Trustee of the Helen Gant Ridley Trust Dated June 30, 1995; Barbara Lou Winkler; Barbara Lou Winkler, Attorney-in-fact for Patricia Cleone Dahlem; Barbara Lou Winkler, Attorney-in-fact for Patricia Cleone Dahlem; Barbara Lou Winkler, Attorney-in fact for Ronald Gene Maples; Patricia Cleone Dahlem; Ronald Gene Maples and Christopher Gant, Defendants–Appellants,**

and

**Thomas Wells Aitken, personal representative of the Estate of S. Thomas Aitken, Deceased, Defendant–Appellee,**

and

**James H. Chandler and Donald R. Stewart, Jr. Co–Trustees under the Last Will and testament of Patrick Barney Feagin, Deceased; Linda S. Feagin; Margery Mayo Feagin, Deceased; Linda S. Feagin; Margery Mayo Bird nee Feagin; and John Warren Royalties Corporation, if in existence or its successors, Defendants.**

No. 95,046.

Supreme Court of Oklahoma.

April 17, 2001.

Rehearing Denied Jan. 14, 2002.

William A. Gossett, Duncan, OK, for Defendants–Appellants, the Garvin and Gant successors.

Tom Frailey, Huckaby, Fleming, Frailey, Chaffin, Cordell, Greenwood & Perryman, LLP, Chickasha, OK, for Defendant–Appellee, Aitken.

Robert J. Hays, Phil Gordon, Hays & Gordon, Chickasha, OK, for Plaintiff, Mack Oil Company.

OPINION

WATT, V.C.J,

FACTS AND PROCEDURAL HISTORY

¶ 1 Plaintiff, Mack Oil Company, filed this action for interpleader in the District Court of Garvin County on November 2, 1998. Mack Oil was a stakeholder as the result of having drilled two gas wells in the northwest

quarter of Section 16, Township 3 North, Range 5 West of the Indian Meridian in Grady County. At issue here is the ownership of a one-eighth interest in the minerals underlying an eighty acre tract, which is contained in the quarter section upon which Mack Oil drilled its wells.[1] Mack Oil has regularly paid the royalties relating to the one-eighth, 10 mineral acre interest at issue into court and the amount accrued when Mack Oil filed its response to the Garvin and Gant successors' petition in error on August 21, 2000 was $164,986.24. Mack Oil represents that it is continuing to pay additional accruing royalties into court on a monthly basis.

¶ 2 In 1926, N.B. Feagin acquired an undivided one-half interest, 40 mineral acres in the minerals underlying the 80 acre tract at issue here. In 1927, Feagin conveyed an undivided one-third interest in the tract, 26.667 mineral acres to Knox L. Garvin and Walter H. Gant.

¶ 3 Feagin's 1927 conveyance to Garvin and Gant left Feagin with a one-sixth interest in the property, 13.333 mineral acres. Nevertheless, on November 22, 1928 Feagin purported to convey a one-fourth interest, 20 mineral acres to C.E. McCaughey, which was 6.667 acres more than Feagin actually owned at the time.

¶ 4 On April 20, 1929, McCaughey conveyed back to Feagin a one-eighth interest in the tract, 10 mineral acres.

¶ 5 On April 25, 1929, Feagin, Gant, and Garvin conveyed a three-eighths interest, 30 mineral acres, to J.R. Bridgeford. The conveyance to Bridgeford is important because if McCaughey's reconveyance to Feagin really conveyed 10 mineral acres, then Garvin and Gant conveyed a total of 20 acres to Bridgeford. But if McCaughey's reconveyance to Feagin served to re-vest Feagin with only 3.333 mineral acres because of Feagin's earlier over-conveyance of 6.667 acres to McCau-

ghey, then Feagin conveyed only 3.333 acres to Bridgeford because that was all he owned. If so, then Garvin and Grant conveyed the balance, 26.667 mineral acres, of the 30 acre conveyance to Bridgeford, not just 20 mineral acres. Thus, the Garvin and Gant successors' claim to title to the disputed 6.667 acres turns on whether McCaughey's reconveyance to Feagin conveyed 10 mineral acres or only 3.333 mineral acres.

¶ 6 On May 15, 1929, McCaughey conveyed a one-eighth interest, 10 mineral acres to Frank W. Miller, Trustee. This deed was recorded on May 31, 1930.

¶ 7 In March 1931, McCaughey executed two correction deeds, which McCaughey purported to be a substitute for his original conveyance to Miller in order to correct the quantum of his conveyance to Miller from one-eighth, 10 mineral acres, to one-twelfth, 6.667 mineral acres. Apparently Miller either did not know of the correction deeds or chose to ignore them as he conveyed a one-eighth interest, 10 mineral acres to John Warren Royalties Corporation on July 15, 1940. Aitken is the successor in interest to John Warren Royalties Corporation.

¶ 8 If the doctrine of after acquired title applies here then Feagin's November 22, 1928 over-conveyance of 6.667 mineral acres to McCaughey inured to McCaughey's benefit when McCaughey reconveyed 10 mineral acres to Feagin on May 27, 1929 and Feagin regained title to only 3.333 mineral acres, not 10 mineral acres. If so, the 10 mineral acres that McCaughey conveyed to Frank W. Miller, Trustee ultimately passed to Aitken by mesne conveyances. If, on the other hand, the after acquired title doctrine does not apply here, McCaughey's conveyance to Miller conveyed only 3.333 mineral acres, which, therefore, is all that Aitken owns. Under these circumstances, the 6.667 mineral acre balance would inure to the benefit of the Garvin and Gant successors.

---

1. The eighty acre tract is described as follows:
   The North Half of the Northeast Quarter of the Northwest Quarter (N/2 NE/4 NW/4); and the Northwest Quarter of the Northwest Quarter (NW/4 NW/4); and the North Half of the Southwest Quarter of the Northwest Quarter (N/2 SW/4 NW/4) of Section 16, Township 3

   North, Range 5 West of the Indian Meridian, Grady County, Oklahoma.
   For clarity, the fractional ownerships and the number of acres involved in the mineral deeds described in this opinion will be stated in terms of this eighty acre tract.

¶ 9 Both Aitken and the Garvin and Gant successors filed motions for summary judgment. The parties agree that there are no disputed issues of material fact. On June 20, 2000, the trial court held that the doctrine of after acquired title applied to the conveyances at issue and entered summary judgment for Aitken.

¶ 10 The trial court entered an order on June 27, 2000 in which it determined that there was no reason for delaying the appeal and declared that its order granting summary judgment was a final and appealable judgment under 12 O.S. Supp.1995 § 994(A). On September 21, 2000, we granted the Garvin and Gant successors' motion to retain this appeal because the issue presented in this appeal is a matter of first impression.

## ISSUE

¶ 11 Does the after acquired title doctrine apply here so that McCaughey's conveyance of 10 mineral acres back to Feagin, dated April 20, 1929, caused an interest in 6.667 mineral acres thereof to immediately vest in McCaughey because Feagin, in his earlier conveyance to McCaughey of 20 mineral acres, dated November 22, 1928, had purported to convey 6.667 mineral acres more than Feagin owned?

We answer "yes."

## DISCUSSION

I. *The facts of this appeal give rise to no exception to the doctrine of after acquired title.*

¶ 12 The parties agree that unless an exception to the application of the after acquired title doctrine is made here, the doctrine's application caused McCaughey's April 20, 1929 conveyance to Feagin of 10 mineral acres to immediately vest 6.667 mineral acres in McCaughey because Feagin's earlier conveyance of an ostensible 20 mineral acres had conveyed only 13.333 acres. The Garvin and Gant successors claim, however, that there is an exception to the after acquired title doctrine that applies here.

¶ 13 The Garvin and Gant successors argue that the doctrine of after acquired title, also known as estoppel by deed, is a common law doctrine that has been codified in Oklahoma law in 16 O.S.1991 § 17:

All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be.

¶ 14 The Garvin and Gant successors cite to *Sorenson v. Wright,* 268 N.W.2d 203 (Iowa 1978) for the proposition that an exception to the common law rule arises "when the after-acquired interest comes from the earlier grantee.... His [the original grantor's] acceptance [of a reconveyance from his grantee] does not constitute a denial of the title he conveyed to the grantee." *Sorenson,* 268 N.W.2d at 205. Whether such an exception applies under Oklahoma law is a matter of first impression.

¶ 15 Our analysis of *Sorenson* and the authorities it relies on convinces us that there is no basis in Oklahoma law for recognizing an exception to the after acquired title doctrine here. The first step in our analysis will be to review the facts in *Sorenson.* In *Sorenson,* Ernest Jeffrey died in 1946, seized of 120 acres of land. Jeffrey's wife, Inez, and six children, consisting of three girls and three boys, one of whom was Albert Jeffrey, inherited the land. In April 1947, Albert conveyed a one-third interest in the 120 acre tract to his mother, Inez, although Albert owned only one-ninth of the tract at the time. In August 1947, Inez, Albert, and the other five children entered into a family settlement agreement in which they agreed that Albert and his brothers, Ernest, Jr., and Harold would each receive a one-third interest in the 120 acre tract. In September 1947, Inez, and the three girls gave a special warranty deed to the three boys, conveying the 120 acres to the three boys in equal shares as tenants in common. *In their deed Inez and the three girls expressly recited that it was their intention to divest themselves of "all right, title and interest" in the property.*

¶ 16 The *Sorenson* court rejected the claim of plaintiffs, who were relying on the theory that under the after acquired title doctrine

the 1947 special warranty deed to Albert from his mother, Inez, and sisters of one-third of the 120 acres did not vest title to the property in Albert. Instead, claimed the plaintiffs, title remained in Inez, through whom they claimed as the result of a later quit claim deed. Not surprisingly, the Iowa court rejected this argument. We believe that the pivotal fact in *Sorenson* was Inez's express recitation in her deed to Albert and her other two sons that she intended to divest herself of "*all* right title and interest in the property," not that Albert's after acquired title came from His grantee, Inez. The facts in *Sorenson* show clearly what the parties intended: Albert was to have a one-third interest in the 120 acres and his mother, Inez, was to completely divest herself of any interest in the property. Any other result than the one reached by the *Sorenson* court would have been patently inequitable. It is for this reason, it seems to us, that the *Sorenson* court found the facts before it supported the application of an exception to the after acquired title doctrine.

¶ 17 The facts in the case before us are critically different from those before the *Sorenson* court. Here, McCaughey reconveyed to Feagin only one-half of the 20 acres Feagin had purportedly conveyed to him. Thus, the presumption arises that McCaughey intended to retain 10 mineral acres not just 3.333 acres, which is all that he would have owned after his reconveyance to Feagin if the doctrine of after acquired title did not apply. There is nothing inequitable about giving effect to what appears to have been the intent of the parties. Further, it was Feagin, not McCaughey, who set afoot the difficulties that caused this case to be filed. Had Feagin not over-conveyed the 6.667 acres at issue here in the first place, this dispute would never have arisen.

¶ 18 We hold that the doctrine of after acquired title applies here under Oklahoma law. Thus, Feagin's 6.667 acre over-conveyance was immediately corrected when McCaughey delivered the deed reconveying 10 acres to Feagin and 6.667 acres thereof immediately re-vested in McCaughey. Our holding is consistent with our earlier pronouncements. In *Wood v. Sympson*, 1992 OK 90 ¶ 14, 833 P.2d 1239, 1243, we quoted with approval from *Hanlon v. McLain*, 1952 OK 127 ¶ 32, 242 P.2d 732, 737:

> This court, under its former decisions, is committed to the philosophy of the law that a grantor is estopped from asserting an after-acquired title as against his grantee to whom he has given a warranty of title, *no matter what conduit or circuity of conveyancing the title may pass through in returning to the grantor.*

[Emphasis added.]

¶ 19 We have reviewed the authorities cited by the Iowa Supreme Court in *Sorenson* for the proposition that one's reacquisition of title from one's grantee creates an exception to the after acquired title doctrine. None of the fact situations in the cases cited in *Sorenson* were similar to the facts of this case, however. Those authorities do not support the Garvin and Gant successors' argument that the after acquired title doctrine should not apply here.

■ ¶ 20 We have consistently held that we will not indulge in "a broad inquiry into weighing the equities before recognizing that title passed by operation of law upon reacquisition of the property by the grantor." *Wood v. Sympson*, 1992 OK 90, 833 P.2d 1239, note 12, quoting with approval from *Campbell v. Butler*, 1988 OK 75 ¶ 19, 770 P.2d 7, 10. In *Wood*, we rejected the contention that we should "engage in a searching inquiry into the equities of the situation" before applying the after acquired title doctrine. 1992 OK 90 ¶ 24, 833 P.2d at 1246, note 12. Applying this rule to the case at bar, we hold that before we will recognize an exception to the after acquired title doctrine in Oklahoma, the party seeking the exception must first show that, under the facts and circumstances presented, applying the doctrine would be inequitable. No such showing was made here. Indeed, there is nothing in the record before us to support the recognition of an exception to the doctrine of after acquired title.

II. *The Probate Decree in the B. Thomas Aitken probate does not support the proposition that the estate did not claim a one-eighth, 10 mineral acre interest in the 80 acre tract at issue here.*

■ ¶ 21 The Garvin and Gant successors argue that language in the final decree in the

B. Thomas Aitken estate establishes that the estate did not claim a one-eighth, 10 mineral acre interest underlying the 80 acres at issue here.[2] The Garvin and Gant successors rely on language in the final decree that describes the estate's interest in the 80 acres as being one-sixteenth, which would be 5 mineral acres. Aitken, however, points out that the final decree describes the property of B. Thomas Aitken,

> ... so far as known to the Co–Executors but that other oil and gas mineral interests located within the state of Oklahoma and belonging to the Estate of said decedent may hereafter be discovered and that if such interests exist, the same should be distributed to and title thereto should be vested in S. Thomas Aitken.

Aitken also points out that 58 O.S.1991 § 692.1 allows for distribution of after-discovered property, although it was not described in the decree.[3]

¶ 22 In any event, the inaccurate statement in the final decree that Aitken owned a one-sixteenth or 5 mineral acre interest does not conform with either party's theory of Aitken's ownership: Aitken claims, and the trial court found, that he owns 10 mineral acres, while the Garvin and Gant successors' claim that Aitken owns only 3.333 acres. There is nothing in the record that would support a finding that Aitken owns 5 mineral acres. We hold, therefore, that the final decree in the Aitken estate does not support the Garvin and Gant successors' conclusion that the estate did not claim ownership of a one-eighth or 10 mineral acre interest in the 80 acre tract.

## CONCLUSION

¶ 23 There is no support either in the record or Oklahoma law for the Garvin and Gant successors' claim that we should recognize an exception to the doctrine of after

acquired title in this case. There has been no showing that doing so would do equity or avoid inequity. Under such circumstances, Oklahoma law is clear that the after acquired title doctrine was properly applied by the trial court. *Wood v. Sympson,* 1992 OK 90 ¶ 14, 833 P.2d 1239, 1243. Although the description of the 80 acre tract at issue here inaccurately stated that Aitken owned a one-eighth or 5 mineral acre interest in the tract, the decree also recognized the possibility that the estate might own mineral interests beyond those that were accounted for in the final decree. Further there is no theory of ownership that the record would support that would show Aitken's ownership interest as being 5 acres. His interest was either 10 or 3.333 mineral acres, not 5. We find no error, therefore, in the trial court's grant of summary judgment for Aitken and against the Garvin and Gant successors on the ground that the doctrine of after acquired title applied.

AFFIRMED.

¶ 24 HODGES, LAVENDER, KAUGER, BOUDREAU, and WINCHESTER, JJ.—concur.

¶ 25 HARGRAVE, C.J., OPALA and SUMMERS, JJ.—concur in judgment.

---

**2.** The B. Thomas Aitken estate was the S. Thomas Aitken estate's predecessor in title.

**3.** Title 58 O.S.1991 § 692.1 provides:
In the event any property is not specifically described in the inventory or in the final decree or in any other part of the proceedings, if the order or decree names the heirs, or devisees or legatees and the proportions or parts they are entitled to have distributed to them in the residue of the estate, the title of said omitted property is established in the heirs, devisees or legatees in the proportions or parts named, without the necessity of the issuing or subsequent letters testamentary, or of administration, or of administration with the will annexed.